No. 9469.

THE STATE EX REL. NEW YORK GUARANTY AND INDEMNITY COMPANY

vs. ALLEN JUMEL, AUDITOR.

The courts of this State have no jurisdiction over a suit by an individual, the object of which is to enforce specific performance of a contract with the State, where the latter is not a party to the suit, has not consented to be sued and is not represented therein by a State functionary duly empowered to do so, at the bringing of the action.

The power conferred to represent may be recalled. The withdrawal thereof leaves the once constituted agent without authority to further represent.

A PPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Kennard, Howe & Prentiss,* for the Relator and Appellant:

1. The relator does not ask that the Auditor should levy a tax, but simply that he should estimate and collect one already levied. Such antecedent levy has been customary since 1852, and has been repeatedly held valid by this court. Hamlin vs. Board, 30 Ann. 445; State vs. McGinnis, 26 Ann. 558; Acts Nos 176, 177 and 179 of 1853, and No. 134 of 1857.

2. The rights of relator cannot be affected by the 14th and 15th Articles of the Constitution of 1879, because:

a. The duty invoked is not legislative.

b. The Constitution of 1879 cannot impair a contract right acquired in 1871. White vs. Hart, 13 Wallace, 646; 37 Ann, 440; 111 U. S. 716; 32 Ann. 884.

3. Nor can such rights be affected by Acts Nos. 3 and 55 of 1874. 4 Wall. 535; 10 Howard, 190; 102 U. S 672; 105 U. S. 301; 16 Wall. 314.

4. Nor can they be affected by repeal of State aid by same Acts of 1874. Id.

5. Nor by subsequent limitations of the rate of taxation. 13 Wall. 646; 4 Wallace, 535 102 U. S. 672; 105 U. S. 300; 103 U. S. 355; 34 Ann. 1149.

22

6.  The rights of relator not affected by adverse decision in its suit against the Funding Board.  Manning's Unreported Cases, p. 198; 105 U. S. 622.
7.  The Act No. 116 of 1869  provided adequate means under Article 111 of Constitution of 1868.  Mather's case, not reported, 29 Ann. 690; 30 Ann. 443; 25 Ann. 70.
8.  The power existing to issue the bonds, and the bonds themselves purporting to have been issued in pursuance of the power, the presumption in favor of the *bona fide* holder is conclusive, and entitles the relator to the relief demanded.  1 Wall. 88, 393; 15 Wall. 355; 92 U. S. 487; 113 U. S, 237.
9.  This is not a suit against the State.  14 Ann. 249; 92 U. S. 531.

*M. J. Cunningham*, Attorney General, for the Respondent and Appellee.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This is an application for a *mandamus* to compel the State Auditor to perform what is represented as a ministerial duty.

The relatrix company charges that it owns $250,000 of the bonds of the State, issued under the provisions of Act No. 116 of 1869; that the interest has been paid thereon up to 1873, none being paid since; that by the seventh section of said act it is made the duty of the State Auditor to calculate the rate of taxation on the total assessed value of taxable property in the State, sufficient to pay the interest, and to notify said rate when fixed to the tax collectors, requiring them to collect the same in the manner prescribed by law.

The Auditor, among other defenses, sets up substantially : that this is a proceeding to enforce a State contract; that the State is not a party to the suit; that he has no authority to represent the State in it; that whatever duty and power were once imposed on the State Auditor by the seventh section invoked, have ceased to form part of his functions, because forbidden by the State Constitution, which prohibits the levy of State taxes for any purpose in excess of six mills; that the Court has no jurisdiction over the subject-matter and cannot compel him to make the computation asked and issue instructions for the collection of the tax thus ascertained.

From an adverse judgment the relatrix company has appealed.

It is proper to premise, that it appears from the record that the present plaintiff, as the holder of the same bonds, took steps to have them funded at the rate of sixty cents on the dollar, as a compromise, under the terms of Act No. 11 of 1875, contradictorily with the State Board of Liquidation, but was not allowed to do so, the court holding that the bonds had not issued "in strict conformity to law and for a valid consideration," and that want of knowledge of the fraud and acquisition for a valid consideration would not relieve third parties.   Manning's U. R. C. p. 188.

On writ of error, the United States Supreme Court, after reviewing the facts, considered that the question was not whether in an authorized action against the State, Act 11 permitted the State to prove, as against a *bona fide* holder, that the bond was invalid; but whether such holder was entitled to the funding offered to holders of securities, valid in the hands of the first taker.

The court held that every legal right which the original holder acquired still remained and was enforceable by the company,—this obligation of the State to pay continuing to exist and the judgment refusing the funding being no bar to any *proper* proceeding for payment.

The court, on the federal question, distinctly observed that the State had a right to say, when she proposed a scheme for the compromise of her debts, what creditors should be included, and that, as the act in question, No. 11 of 1875, did not impair the obligation of the contract with the first taker, it was not to be viewed as unconstitutional.

The federal question having been correctly decided below, the judgment was consequently affirmed.

The present proceeding contemplates the enforcement of the contract of the State with the first takers, insisting on specific performance by the levying and collecting of the required tax.

The State Auditor denies the jurisdiction of the court, because it is a suit against the State, who is not made a party and who has never consented to become such; because he does not and cannot represent the State, the duty and powers conferred by the section relied on having been recalled by the Constitution.

The fact is that the State is the real defendant in the case, and that she has not been made a party.

Neither does the Act of 1869, nor any other legislation, permit the State to be sued in this or any other similar action.

It would be pure loss of time to reason and to adduce authorities to show that the pretensions of plaintiff cannot be adjudicated upon in the absence of the State; for it is self-evident that the remedy asked could not be allowed without finally determining that the bonds sued on constitute part of the indebtedness of the State which must be paid. This cannot be done.

But the relatrix company claims that suit was authorized by the Act of 1869, sec. 7, against the State, represented by the Auditor; that the suit is thus brought, and that the defense does not hold good.

It is sufficient to say that if this was ever so, the authority to sue, as well as that to be sued, were formally revoked by the State, in the exercise of her supreme political power, as results from the prohibi-

tions placed by her .Constitution against the. levy. and collection of any State tax in excess of six mills.   See Const., art. 209, and the State debt. ordinance.

In the cases of Louisiana vs..Jumel, and of Elliott vs. Wiltz, both taken from the United States Circuit.Court for the Eastern District of Louisiana to the United States Supreme Court, in which it was sought to take from the State Treasury, by proceedings against the Auditor and the Treasurer, money collected to pay coupons of State bonds maturing on January 1, 1880, and diverted by the debt ordinance, which forms part of the Constitution, and applied to other and independent purposes.—the Supreme Court of the United States distinctly held that the ordinance having forbidden the payment of the interest and withdrawn from the State officers the means of carrying her contract into effect, the execution of the contract could not be enforced nor the relief sought awarded in a suit to which the State is not a party and which is brought against officers who are merely obeying the positive orders of the supreme political power of the State.   107 U. S. 712 (XVII Otto); see also 33 Ann. 498, quoted with approbation.

The reply of the relatrix company to this position is, that the doctrine is established and familiar that, as to the contract rights acquired by it, no provision of the Constitution of 1879 can have any legal effect. In support, many authorities are quoted, but they have no bearing. They differ *toto cœlo*, as not one refers to a suit by an individual to enforce a State contract, affected by some constitutional provision, expressing the adverse *will* of the State to the execution of the contract.

It was long since solemnly announced by the Supreme Court of the United States, through its organ, Chief Justice Taney:

" Those who deal in the bonds and obligations of a sovereign, are aware that they must rely altogether on the sense of justice and good faith of the State, and that the judiciary of the State cannot enforce the contracts without the consent of the State, and the courts of the United States are expressly prohibited from exercising such jurisdiction."   Bank of Washington vs. Arkansas, 20 How. 530.

This announcement has never been questioned or gainsaid, so well founded is it on principles of the highest order in political economy. 33 Ann. (511–2.)

In the Virginia coupons cases, 114 U. S. 332, the principle was recognized, the court by a mere majority holding, however, that it did not apply to a case in which the State actively attempted a violation of its contract.   The main question there was,.after the State had issued her bonds with coupons to be received in payment of taxes, whether the

State could revoke the right to give in payment, and where an offer or tender had been made, whether the State could seize the taxed property and subject it to the claim. The injunction was maintained.

In that case, nevertheless, four Justices dissenting, one of them, Mr. Justice Bradley, well said:

\* \* "No State can be coerced into a fulfillment of its contracts or obligations to individuals by the instrumentality of the Federal judiciary. It is true it cannot proceed against them contrary to its contract, but on the other hand it cannot be proceeded against on its contract. All those who deal with a State have notice of this fundamental condition. They know, or are bound to know, that they must depend upon the faith of the State for the performance of its contracts, just as if no Federal Constitution existed, and cannot resort to compulsion unless the State chooses to permit itself to be sued.

"Moreover, the Eleventh Amendment is not intended as a mere formula of words to be slurred over by subtle methods of interpretation so as to give it a literal compliance without regarding its substantial meaning and purpose. It is a grave and solemn condition, exacted by sovereign States for the purpose of preserving and vindicating their sovereign right to deal with their creditors and others propounding claims against them according to their own views of what may be required by public faith and the necessities of the body politic. We have no right, if we were disposed, to fritter away the substance of this solemn stipulation by any neat and skillful manipulation of its words. We are bound to give it its full and substantial meaning and effect. It is only thus that all public instruments should be construed."

In the matter now under consideration, we conclude that, as the object in view is the enforcement of a contract of the State, as the State is not directly or indirectly a party to the suit, as the defendant has no authority to represent the State, we have no jurisdiction to hear the cause and determine whether or not the obligation of the contract has been impaired.

Under such circumstances, the judgment appealed from is affirmed, with costs.