(67 South. 370)

No. 20854.

STATE ex rel. LOUISIANA TRUST & SAVINGS BANK v. BOARD OF LIQUIDATION OF STATE DEBT et al.

(Jan. 11, 1915. Rehearing Denied Feb. 8, 1915.)

*(Syllabus by the Court.)*

1. STATES ☞191—ACTIONS AGAINST—RIGHT.

A state may not be sued in its own courts without its consent.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. ☞191.]

2. STATES ☞121—FUNDS—OWNERSHIP—ADMINISTRATION.

The funds of a state are the property of the state, and they are administered by the Legislature.

[Ed. Note.—For other cases, see States, Cent. Dig. § 120; Dec. Dig. ☞121.]

3. STATES ☞191—"SUIT AGAINST THE STATE" —STATE FUNDS.

A suit for the possession of the funds of a state, as depositary or otherwise, is a suit against the state.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. ☞191.

For other definitions, see Words and Phrases, First and Second Series, Suit Against the State.]

4. STATES ☞67 — BOARD OF LIQUIDATION — NATURE OF DUTIES.

The board of liquidation of the state debt is a servant of the state, charged, in part, with depositing the funds of the state; the deposits to be made under certain conditions and at its discretion. Its duties in that connection are discretionary to a certain extent. They are not ministerial.

[Ed. Note.—For other cases, see States, Cent. Dig. § 69; Dec. Dig. ☞67.]

5. ACTION ☞3—BREACH OF STATUTORY DUTY.

"Wherever an action is brought for a breach of duty imposed by statute, the party bringing it must show that he had an interest in the performance of the duty, and that the duty was imposed for his benefit. But where the duty was created or imposed for the benefit of another, and the advantage to be derived to the party prosecuting, by its performance, is merely incidental, ·and no part of the design of the statute, no such right is created as forms the subject of an action."

[Ed. Note.—For other cases, see Action, Dec. Dig. ☞3.]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; C. K. Schwing, Judge ad hoc.

Mandamus by the State, on relation of the Louisiana Trust & Savings Bank, against the Board of Liquidation of the State Debt and others. From a judgment for relator, defendants appeal. Reversed, alternative writ of mandamus recalled, and injunction dissolved.

See, also, 135 La. 571, 65 South. 745.

Harry P. Gamble, Asst. Atty. Gen. (Gustave Lemle, McCloskey & Benedict, and Howe, Fenner, Spencer & Cocke, all of New Orleans, Albin Provosty, of New Roads, Laycock & Beale, of Baton Rouge, Ott, Johnson & Ott, of Bogalusa, Bird & Bird, of Baton Rouge, and Hall, Monroe & Lemann, of New Orleans, of counsel), for appellant Board of Liquidation of State Debt. Browne, Williamson & Browne, of Shreveport, Thomas M. Burns, of Covington, Merrick, Gensler & Schwarz, of New Orleans, and Charles A. Holcombe and Taylor & Porter, all of Baton Rouge, for appellee.

SOMMERVILLE, J. The relator bank alleges that it was solicited by the respondent board to bid, under the terms of Act No. 205 of 1912, p. 415, for the deposit of the public funds of the state of Louisiana for a limited term, and to thus become one of the fiscal agencies of the state of Louisiana; that it bid for the deposit of those funds, to the extent of one-fourth of the money to be deposited by the board of liquidation of the state debt, within the Sixth congressional district, which deposit would amount to about $20,000 per annum; that, contrary to the terms of the statute, defendant board has awarded the contract for such deposit to other banks in said district, at a lower rate of interest than that bid by relator. And it asks that an injunction issue to prevent the respondent board from declaring certain banks located in said district to be—

"the successful bidders for any part of the funds of the state to be deposited by said board within the district, and from awarding a contract or contracts to said banks, or either of them, for

any part of said deposit, or to any other bank or banks, except the highest bidders, within said district, found to be a safe depository in the sense of safely keeping and restoring the funds ;. and in case said board has already entered into a contract with said banks, or any of them, for any part of the deposits of the funds of the state of Louisiana to be made in the Sixth congressional district thereof, so bid for by relator, from executing and carrying out the same, or depositing any part of said funds in said banks.

"That an alternative writ of mandamus issue in this case directed to the said board of liquidation of the state debt of the state of Louisiana, through its proper officers, commanding said board to assemble and to pass upon the said bids from the Sixth congressional district on the face of the papers, and upon the reliability of the highest bidder or bidders in the Sixth congressional district, in the sense of safely keeping and restoring the funds, and further to declare the relator the successful bidder for one-fourth of all of the funds of the state of Louisiana to be deposited by said board within the Sixth congressional district of said state under the terms of said Act No. 205 of 1912, and upon the security required by said act to be furnished by the relator, to award to relator and execute with it the contract for the deposit of one-fourth of all of the funds of the state of Louisiana to be deposited by said board in the Sixth congressional district of the state of Louisiana, under the terms of said Act No. 205 of 1912, or show cause to the contrary on the day and date and at an hour to be fixed by this honorable court.

"That the said board of liquidation of the state debt of the state of Louisiana, through its proper officers, be duly cited to appear and answer this demand, and, after legal delays and proceedings had, that there be judgment in favor of relator, perpetuating the said injunction and declaring said mandamus absolute."

Relator made certain banks in the Sixth congressional district also parties defendant, which had been declared the successful bidders by the respondent board, and asked for judgment against said banks.

The board of liquidation of the state debt appeared and excepted to the jurisdiction of the court "on the ground that exceptor is an arm, instrument, and agency of the state, and cannot be sued in the courts of the state without express legislative authorization and consent, which have not been given." The board answered further. The cause was tried and submitted. And there was judgment in favor of relator as prayed for, from

which judgment all of the respondents have appealed.

[1-3] No principle is better established than that the state may not be sued in its own courts without its consent. If, therefore, this be a suit against the state, relator must show some authority from the Legislature under which the suit was brought, or its petition will be dismissed.

The state is not named on the record as a party to the suit. The board of liquidation of the state debt is named respondent. But the question whether the state is in legal effect a party to the controversy is not always determined by the fact that it is not named as a party on the record, but by the effect of the judgment or decree which may be rendered.

The board of liquidation of the state debt was organized by Act No. 3 of 1874, p. 39, for the purpose of consolidating and reducing the floating and bonded debt of the state. It was composed of the governor, lieutenant governor, auditor, treasurer, secretary of state, speaker of the house of representatives, who, in section 2 of the act, were authorized or directed to elect a fiscal agent for the state, who should be a member of the board. Absolute discretion was given to the board in selecting this fiscal agent, until the passage of Act No. 23 of the Extra Session of 1907, p. 25, when the election or selection of fiscal agents for the state, parishes, municipalities, etc., was provided. for after advertising for bids for the deposit of the funds of the state and of the different divisions of the state. It is not clear by the terms of that act that the funds of the state, in custody of the state treasurer, were to be adjudicated in this way. Be that as it may, the act was specially repealed by section 7 of Act No. 316 of 1910, p. 538.

The facts, briefly stated, upon which relief is asked by relator, are these:

That the Legislature, in Act No. 205 of

1912, p. 415, has made provision for the selection of a fiscal agency or agencies for the state, parishes, municipalities, public boards, etc., having the custody of public funds. That this fiscal agency or these fiscal agencies must be a bank or banks organized under the laws of the state or of the United States, and domiciled in this state; and they may be selected by the board of liquidation, or by the proper authority of the parish, municipality, commission, or other body created by or under authority of the state, or of any parish or municipality thereof, as the case may be. This bank or these banks must give the security mentioned in the act. Section 3 of the act provides:

"That all funds belonging to or received in behalf of the state of Louisiana by the state treasurer shall be deposited by the board of liquidation of the state debt, one-half thereof in one or more banks in the city of New Orleans, and the remainder in one or more banks in each of the congressional districts of the state, exclusive of the first and second districts," etc.

Section 4 of the act provides, among other things:

"That the conditions under which the funds of the state of Louisiana [here leaving out reference to the parishes, municipalities, boards, etc.] shall be deposited, are as follows:
"(1) That all public moneys in charge of such authorities shall be let by the depositing authority to the bidder or bidders in the city of New Orleans and in the respective congressional districts as provided in paragraph one of section three of this act, offering the highest rate of interest for all or any part of the funds of such authority consistent with the safe-keeping and * * * return thereof," etc.

Other conditions were imposed upon the fiscal agent or agencies.

Section 6, in part, provides:

"All banks desiring to become fiscal agencies or depositories of the state of Louisiana * * * shall make application in writing to the board of liquidation. * * * Said applications * * * shall remain sealed until the date specified in the circular, at which time the same shall be opened in the presence of a quorum of the board of liquidation * * * and shall be examined, and the said fiscal agencies and depositories shall then be selected and notified of such selection."

Section 7 provides:

"That it shall be the duty of the board of liquidation * * * to use all reasonable and proper means to secure to the state the best terms and the highest rate of interest consistent with the safe-keeping and prompt repayment of the funds when demanded, and to let such funds to the highest bidder therefor consistent with the safety of such funds."

It further appears, from relator's petition, it made a bid to become the fiscal agent of the state for one-fourth of the funds of the state to be deposited in the Sixth congressional district, and that the contract was awarded by the respondent board to certain other banks in the district, although the bid of said banks for the whole of the fund was lower than that of relator for a portion of the fund.

It also appears that the banks selected by the board as fiscal agents were banks which were members of a combination of banks, aggregating twenty-two in number, which had made a combined bid for all of the funds of the state, embracing the several congressional districts.

Relator sets forth the illegality of the combined bid referred to, and complains of the action of the board of liquidation in considering and accepting it.

We are asked to decide that the board of liquidation has acted in an illegal manner in disposing of the funds of the state, by contracting for them to be deposited in certain named banks in the Sixth congressional district, rather than by contracting for a portion of them to be deposited with relator.

Relator admits and declares that the funds are the property of the state. Being state property, the state may, through the Legislature, administer upon them without interference by the courts. The Legislature has selected the board of liquidation of the state debt as its representative or servant to select the fiscal agency or agencies of the state. This board acts in the place and stead of the Legislature, with reference to this portion of

the property of the state; it is the servant, not the agent, of the state; and when suit is brought against this fund, or concerning the disposition of it, the state is the real and necessary party defendant; it is the only party in interest. The disposition of the funds of the state is a political matter, reserved to the legislative and executive branches of the government. The judicial branch is not concerned with them, except under legislative authority.

[4] The settlement of questions as to when the judiciary will consider and determine political matters when its power is invoked is not free from difficulties. Decisions are to be found on both sides of the subject, even before one court.

Our attention has been called to the decision of the court in the case of State ex rel. Bank of Franklinton v. Louisiana State Board of Agriculture and Immigration, reported in 122 La. 677, 48 South. 148. That case was brought and decided while Act No. 23, p. 25, of the Extra Session of 1907, before referred to, was in force. It has since been repealed. The relator, in its petition in that case, declared the Louisiana State Board of Agriculture and Immigration to be "a municipal body," and it (the board) was represented in the proceeding by private counsel. It was treated as "a municipal body," "or a public board, commission, or body" not holding funds of the state "in the custody or possession of the state treasurer," throughout the trial of the case, although the Constitution (article 305) declares that it (the Louisiana State Board of Agriculture and Immigration) "shall be recognized as an integral part of the state government." The defense was not made there that the said board was a part of the state government, and that the state could not be sued without its consent, as has been made in this case. That decision does not control here.

The Act of 1910, No. 316, p. 538, which re-

pealed the act of 1907, gives to the board of liquidation of the state debt fullest discretion in selecting a fiscal agent or agencies for the state funds, "provided the rate of interest to be allowed the state by such banks so selected shall not be less than three per cent." But the act of 1910, has been repealed by section 7 of Act No. 205 of 1912, p. 415; and, as has been shown by the extracts from that act herein given, the selection of a fiscal agency or agencies, by the board of liquidation and other bodies, must be made on the condition, among other things:

"That all public moneys in charge of such authorities shall be let by the depositing authority to the bidder or bidders in the city of New Orleans and in the respective congressional districts as provided in paragraph one of section three of this act, offering the highest rate of interest to all or any part of the funds of such authority consistent with the safe-keeping and prompt return thereof, and no bid shall be accepted providing for a lower rate of interest, on such deposits, than three per cent. per annum."

The board of liquidation thus claims its right to "select" (that is, to elect, to prefer, to choose, to single out, to fix upon) the bidder or bidders offering the highest rate of interest for all or any part of the funds "consistent with the safe-keeping and prompt return thereof." And it argues that it is not its ministerial duty, as alleged by relator, to award the fiscal agency of the state to the highest bidder or bidders for the deposit of the state funds; and that the Legislature has given to the board certain discretion in the selection of this fiscal agency.

The act provides that there may be one or several bids, made for the whole, or for parts, of the funds to be deposited; and the board further argues that it must determine, in the exercise of a wise discretion, whether the one bid complained of by relator as having been accepted by the board, in preference to the bids made by it and others for parts of the deposit, contains "the best terms and the highest rate of interest consistent with

the safe-keeping and prompt return of the funds when demanded."

It is not the purpose of the court to intimate any opinion upon the merits of the contentions thus presented. We have only stated the opposing views to enable us to decide whether the suit is or is not one against the state of Louisiana.

It may be, as alleged by relator, that it is willing to pay into the state treasury a higher rate of interest on the deposits which might have been made with it, than will be received by the state from the banks with whom the contracts of deposit have been made.

The act of the Legislature was passed clearly for the benefit of the state, by causing the fiscal agency to pay into the state treasury the highest rate of interest; and the board of liquidation must select such agency, offering such bid or bids, "consistent with the safe-keeping and prompt repayment of the funds when demanded." And the citizens and taxpayers are interested in having such bid or bids accepted; but relator has no such definite and distinct interest in having the courts to declare whether the rates to be collected are too high or too low. A suit to review the official acts of the board of liquidation in the exercise of its judgment as to the rate of interest which should be collected under its construction of the act of the Legislature would operate to disturb the revenue system of the government, and affect the revenues which are to be derived therefrom. Such a suit would obviously, in effect, be a suit against the state. The duties imposed upon the board of liquidation in the selection of fiscal agents are not ministerial. They are political; and they require the exercise of judgment and discretion.

The facts show a situation in which the board was confronted with the necessity of construing the law, and then selecting the fiscal agency or agencies, under the provisions of the act of the Legislature of 1912.

[5] We have said that the act of 1912 was passed for the benefit of the state; and that the property holders and taxpayers of the state were interested in the matters embraced therein. The relator is not compelled to pay anything into the treasury of the state thereunder, inasmuch as it was an unsuccessful bidder. Its property will not have been injured by a violation of the provisions of the act, if they have been violated. So far as the purpose of the act is concerned, the relator is a stranger to the statute—one whose interests were not considered or intended to be conserved in its enactment. It is a mere bidder for funds of the state—a contractor, or one who desires to be a contractor. Its interests, and that of its stockholders, is to secure the deposit of the state's money at the lowest rate of interest. It is obvious that the statute was not enacted for their benefit. If it had been, the Legislature would have provided that the contract should be awarded to the lowest rather than to the highest bidder or bidders.

In reality, this suit is merely a contest against rival contractors for the patronage of the state. One of them has obtained the award of a contract from the state, and the other is in the courts asking that the state be enjoined from making a contract with its rival, and be compelled to make one with it, because some of the public officers of the state are alleged to have violated certain provisions of the act of the Legislature enacted for the sole benefit of the state, its property holders and taxpayers. It is plain that, in the absence of the provisions in the act before referred to, the state has the right to award this contract to any bidder, high or low, and the relator would then have had no cause for complaint. There is no doubt that these provisions were enacted for the benefit of the property holders and taxpayers of the state, and not in the interest or for the benefit of bidders for the deposits. A suit could not be maintained against any de-

fendant for specific performance under such circumstances.

It will be soon enough to consider the effect of a violation of the act under consideration when some of those, for whose benefit the statute was enacted, complain of such violation. Until then, the courts must withhold their hands. The rule of law applicable here is stated by Johnson, J., in Strong v. Campbell, 11 Barb. (N. Y.) 135, 138, where he said:

"Wherever an action is brought for a breach of duty imposed by statute, the party bringing it must show that he had an interest in the performance of the duty, and that the duty was imposed for his benefit. But where the duty was created or imposed for the benefit of another, and the advantage to be derived to the party prosecuting, by its performance, is merely incidental and no part of the design of the statute, no such right is created as forms the subject of an action."

It may be true that relator will not make the profits it hoped to make if its bid had been accepted; but it is also true that it has lost nothing that it did not willingly risk to the chance of its bid being accepted, and it has no cause of action, either at law or in equity, against the party to whom it made its offer. Since the relator cannot obtain this contract itself, the injunction which restrained the board from making a contract for the same deposits with its rival contractor can give it no relief, and the writ of injunction must be dissolved. Colorado Paving Co. v. Murphy, 78 Fed. 28, 23 C. C. A. 631, 37 L. R. A. 630.

In the case of Osborn v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204, three things, among others, were decided:

"(1) A circuit court of the United States, in a proper case in equity, may enjoin a state officer from executing a state law in conflict with the Constitution or a statute of the United States, when such execution will violate the rights of the complainant.

"(2) Where the state is concerned, the state should be made a party, if it could be done. That it cannot be done is a sufficient reason for the omission to do it, and the court may proceed to decree against the officers of the state in all respects as if the state were a party to the record.

"(3) In deciding who are parties to the suit the court will not look beyond the record. Making a state officer a party does not make the state a party, although her law may have prompted his action, and the state may stand behind him as the real party in interest. A state can be made a party only by shaping the bill expressly with that view, as where individuals or corporations are intended to be put in that relation to the case." Davis v. Gray, 16 Wall. 203, 220, 21 L. Ed. 447.

And in the case of Board of Liquidation v. McComb, 92 U. S. 531, 23 L. Ed. 623, where the members of the board of liquidation of the state debt of Louisiana, and not the board itself, were defendants; and where McComb, the holder of "constitutional bonds," issued under the act No. 3 of 1874, enjoined the members of the board of liquidation from funding certain other bonds which were offered for funding, but were not included in the funding scheme, and the funding of which would have injured McComb in his property rights, the court held:

"A state, without its consent, cannot be sued by an individual; and a court cannot substitute its own discretion for that of its executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled that when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance; and, when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases, the writs of mandamus and injunction are somewhat correlative to each other."

The Supreme Court reviewed the decision in the McComb Case in the suit of Louisiana v. Jumel, 107 U. S. 711, 725, 2 Sup. Ct. 128, 140 (27 L. Ed. 448). (There were two suits before the court: One for an injunction, and the other for a mandamus). After observing that the McComb Case had arisen under the funding act of 1874, the same as was involved in the Jumel Case, the court said:

"The board was there enjoined, at the instance of bondholders, from admitting to the

privileges of the compromise proposed by the state certain persons other than those originally provided for and on different terms. And this clearly because the board was, by the very terms of the law, charged with the duty of exchanging the bonds specifically set apart by the contract for a particular purpose, and every bona fide bondholder, by accepting the compromise offered, became personally interested in securing the due administration of the trust which had thus been committed to the board. In fact, the board held the new issue of bonds in trust, and every one who gave up his old obligations and accepted the new in settlement became a beneficiary under the trust, and might act accordingly."

The court held that there was no such trust involved in the Jumel Case, although the same act of the Legislature was under consideration, and that the court was not authorized—

"when a state cannot be sued, to set up its jurisdiction over the officers in charge of the public moneys, so as to control them as against the political power in their administration of the finances of the state."

In that case the Supreme Court adopted the views of the circuit court in refusing to issue an injunction, and affirmed the judgments appealed from.

In the case of State ex rel. Guaranty & Indemnity Co. v. Jumel, 38 La. Ann. 337, where relator sought a mandamus to compel the auditor to perform what was termed a ministerial duty, as set forth in a certain act of the Legislature, the proceeding had for its object the collection of taxes for the payment of certain bonds held by the relator; and we hold there:

"As the object in view is the enforcement of a contract of the state, as the state is not directly or indirectly a party to the suit, as the defendant has no authority to represent the state, we have no jurisdiction to hear the cause and determine whether or not the obligation of the contract has been impaired."

And the Supreme Court of the United States, in reviewing the opinion in that case (134 U. S. 230, 10 Sup. Ct. 511, 33 L. Ed. 891), held "that this is virtually a suit against the state"; and it affirmed the judgment appealed from.

In the case of State ex rel. Hope Co. v. Board of Liquidation, 42 La. Ann. 647, 7 South. 706, 8 South. 577, we had occasion to examine very fully into the question as to whether the board of liquidation of the state debt represented the state of Louisiana, and whether it might be sued without the consent of the state, as expressed by an act of the Legislature. There the question was as to the right of this court to issue a mandamus to the members of the board, ordering them to assemble, take action on the bonds held by the relator, and decide whether or not they were fundable into consolidated bonds of the state or not. In the course of our opinion it is said:

"It has long been a question of delicacy and great difficulty for the courts of this country, state and federal, of last resort, to determine where the exact line of demarcation is to be drawn between political and executive duties, for the performance of which mandamus will not go to a governor of a state, and purely ministerial duties, for the performance of which the writ will lie. * * * If it be, even, conceded that it is questionable whether the duties assigned to the funding board are purely ministerial, this court would 'open a wide margin for the exercise of judicial power,' in assuming that they are, and making the mandamus peremptory. * * *

"This extensive examination of and research into adjudicated cases has satisfied us of the correctness of the general proposition that whenever, by the Constitution and laws of a state, officers of the executive branch of the government are vested with discretionary functions, in the performance of civil duties, or political powers and responsibilities are devolved upon them, they are not answerable to judicial process, but that their acts are only examinable politically. From this proposition the supplemental one may be deduced that when such duties and powers devolve upon the executive branch or department of the state government, as a whole, as in this case, the members of the board thus constituted are likewise exempt from judicial control, and notwithstanding that some of the officers, respectively, are subject to judicial control, and can be coerced by mandamus to act, and to perform 'their ordinary official duties.'"

The last expression on the subject of when a public officer is called upon to perform an alleged ministerial duty, where the government is involved, is found in the decision of

the Supreme Court in the case of State of Louisiana v. McAdoo, Secretary of the Treasury of the United States, 234 U. S. 627, 34 Sup. Ct. 938, 58 L. Ed. 1506. In addition to that which we have already taken from that opinion, the court say:

"Obviously such suits to review the official action of the Secretary of the Treasury in the exercise of his judgment as to the rate which should be exacted under his construction of the tariff acts would operate to disturb the whole revenue system of the government and affect the revenues which arrive therefrom. Such suits would obviously, in effect, be suits against the United States. * * *
"The duties imposed upon the Secretary of the Treasury in the collection of sugar tariffs are not ministerial. They are executive and involve the exercise of judgment and discretion. The facts show a situation in which the Secretary of the Treasury was confronted with the necessity of construing the law, and then instructing the customs officers as to whether the 20 per cent. preferential duty on Cuban sugar required by the convention and the act of 1903 confirming that treaty had been superseded or in any wise affected by the later provisions of the Underwood act."

And the court refused to permit the state of Louisiana to file a suit against the Secretary of the Treasury or against the United States.

Reference to Act No. 205 of 1912, p. 415, shows that the board of liquidation was empowered to "select" a fiscal agency or fiscal agencies, for the funds of the state of Louisiana, with whom said funds were to be deposited, and the words "to select" exercise a controlling influence over the performance of the duties by said board. These funds are to be let to the bidder or bidders offering the highest rate of interest on all or any part of the fund "consistent with the safe-keeping and prompt return thereof"; and it is further provided:

"It shall be the duty of the board of liquidation * * * to use all reasonable and proper means to secure to the state the best terms and the highest rate of interest consistent with the safe-keeping and prompt repayment of the fund when demanded, and let such funds to the highest bidder therefor consistent with the safety of such funds."

The decision of the board of liquidation is therefore decisive of the whole matter. Its action in the premises is clearly political, and not ministerial. The board belongs to the political department of the state government. It is the servant of the state in the matter under consideration; and it is not subject, in this case, to the control of the judiciary.

The funds, of which the board of liquidation has the disposal, are the property of the state, and are so declared to be by relator in its petition. The state is therefore a necessary party to the suit which seeks to dispose of those funds in any manner. And, as relator has no interest in the funds of the state, it cannot control, through the courts, the disposition of those funds, in the absence of permission from the Legislature to sue the state.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed; that the alternative writ of mandamus issued herein be recalled; and that the injunction be dissolved—all at the cost of relator in both courts.