*371
 
 O’NIELL, Chief Justice.
 

 The Board of Liquidation of the State Debt is appealing from a judgment enjoining the board and its members from transferring money from the State’s general fund to certain state agencies. The judgment declares unconstitutional Act No. 73 of 1936 and Section 15 of Act No. 266 of 1942, so far as these statutes purport to authorize the board to transfer money from the general fund to any of the state agencies in excess of the specific appropriations made by the Legislature.
 

 The plaintiff is a taxpayer, suing in his capacity as such, and averring that the statutes—Act No. 73 of 1936 and Section 15 of Act No. 266 of 1942—are unconstitutional for the several reasons set forth in his petition. The Governor, as chairman of the board, ex officio, and as one of the defendants in the suit, did not contest the matter, but in his answer stated merely that he desired to abide by whatever judgment the court might render, and that, as only questions of law were presented, he denied the allegations of the petition merely to put at issue the question of constitutionality of the statutes under which a majority of the members of the board claimed authority to make the transfers of which the plaintiff complained.
 

 The board of liquidation and a majority of its members challenge the plaintiff’s right of action to maintain the suit in his capacity merely as a taxpayer. But, whatever difference of opinion may have prevailed heretofore on that question, it is now settled by several recent decisions of this court that a taxpayer, as such, has a right of action to enjoin a state official or state agency from disposing of public funds-under authority of a statute which the taxpayer contends is unconstitutional. Graham v. Jones, 198 La. 507, 3 So.2d 761; Stewart v. Stanley, 199 La. 146, 5 So.2d 531; Ricks v. Close, 201 La. 242, 9 So.2d 534.
 

 The board of liquidation and a majority of its members pleaded in the district court, by way of an exception to the jurisdiction of the court, that the suit was in effect if not in fact a suit against the State and was therefore forbidden by Section,' 35 of Article III of the Constitution, because the plaintiff was not authorized by the Legislature to file the suit. But it is begging the question to argue that a suit to prevent a state official or state agency from disposing of funds of the State in violation of the Constitution or of a law of the State is a suit against the State. Such a suit is not a suit against the State, in the meaning of Section 35 of Article III of the Constitution, if the defendant, state official or state agency, is proceeding in violation of law; and that question of course appertains to the merits of the case.
 

 To support their argument that this is a suit against the State, the appellants rely particularly upon State v. Liberty Oil Co., 154 La. 267, 97 So. 438, and State ex rel. Louisiana Trust & Savings Bank v. Board of Liquidation, 136 La. 571, 67 So. 370. Those decisions are not appropriate to this case. State v. Liberty Oil Company was a summary proceeding to collect a license tax for the sale of gasoline, and in the answer to the suit the defendant set up
 
 *373
 
 a reconventional demand for license taxes paid under protest before the suit was filed. This court observed that the reconventional demand was not made as an off-set against the demand made by the State but was made as a direct action to obtain a judgment against the State. In the present suit the plaintiff is not asking for a judgment against the State in any sense. The case of State ex rel. Louisiana Trust & Savings Bank v. Board of Liquidation, and the companion cases entitled State ex rel. Commercial Nat. Bank v. Board of Liquidation of State Debt, and State ex rel. Commercial-Germania Trust & Savings Bank v. Board of Liquidation of State Debt, 136 La. pages 571-587, 67 So. 370-375, were suits to control the board of liquidation in the exercise of its authority and discretion in the matter of selecting the banks to serve as the fiscal agencies with which to deposit the State’s funds, under the terms of Act No. 205 of 1912, p. 415. The plaintiffs averred that in their bid for a part of the funds to be deposited they had offered a higher rate of interest than the successful bidders had offered. In the opinion rendered'in the case (136 La. loc. cit. 585, 67 So. loc. cit. 375) it was said that the words "to select” had a controlling meaning concerning the performance of the duties of the board, and that it was the province of the board to use all reasonable and appropriate means to secure to the State the best terms and the highest rate of interest consistent with the safekeeping of the State’s funds and prompt payment when demanded. In other words, the duty of the board to let the funds to the highest bidder was qualified by the phrase “consistent with the safety of such funds”. The suits of the complaining banks, therefore, did not have for their object the prevention of a violation of a statutory duty of the board, but had for their object the controlling of the board in the exercise of its judgment or discretion. For that reason the opinion rendered in the cases appertains more to their merits than to the plea that the suits were in effect suits against the State. The object of the present suit is not to control the board of liquidation in the exercise of its judgment or discretion, but to prevent the board from proceeding under authority of two statutes which are alleged to be unconstitutional. Such a suit against a state official or state agency is not a suit against the State, in the meaning of Section 35 of Article III of the Constitution.
 

 The board of liquidation and a majority of its members filed an exception of no cause or right of action; but, inasmuch as the exception is founded upon the contention of the defendants that Act No. 73 of 1936 and Section 15 of Act, No. 266 of 1942 are not unconstitutional, the exception appertains entirely to the merits of the case.
 

 It was admitted by the members of the board, on the trial of the case, that they intended to make the appropriations or transfers of money from the general fund to the state agencies referred to in the plaintiff’s petition. For that reason the only question is whether Act No. 73 of 1936 and Section 15 of Act No. 266 of 1942, under which the board intended to make the appropriations or transfers from the
 
 *375
 
 general fund to the state agencies in excess of the specific appropriations made by the Legislature, are, to that extent, unconstitutional.
 

 It is not disputed that Act No. 73 of 1936 purports to confer upon the Board of Liquidation of the State Debt unlimited authority in the matter of transferring money from the State’s general fund to any of the agencies of the State, and to that end authorizes the board to disregard the specific appropriations made by the Legislature, and even to suspend the provisions of any law providing for the appropriation or deposit or expenditure or dedication of public funds, for such length of time as a majority of the members of the board may in their judgment deem necessary, to avoid an impairment of the faith and credit of the State or of any parish, municipality or political subdivision of the State. The act provides:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That when a majority of the members thereof shall determine that it is necessary on account of the postponement of taxes, the unavoidable delay in the assessment of property, or for the protection of the faith and credit of the State or of any of its parishes, municipalities, political subdivisions, public boards or corporations, or to adjust the financial affairs of the State so that there may be no impairment of the faith and credit of the State or of its obligations, the Board of Liquidation of the State Debt be, and it is, hereby authorized to suspend the provisions of any law of this State providing for the appropriation, deposit, expenditure or dedication of public funds for such periods of time, and from time to time, as in the opinion of such majority may be necessary to prevent impairment of the faith and credit, contracts or obligations of the State or any such parish, municipality, political subdivision, board or corporation; and the Board of Liquidation of the State Debt may, when a majority of said board shall determine that it is necessary to protect the faith and credit of the State, or of any of its parishes, municipalities, political subdivisions, boards or corporations, or to adjust the financial affairs of any of them, or that it is to the best interests of any of them, transfer any sum of money appropriated, deposited or dedicated by any law of this State from the purpose for which such appropriation, deposit or dedication was made to other purposes by decreasing, adding to or increasing one or more items, or adding new items, of appropriation, deposit or dedication or by providing that such increases or additions shall be paid out of the general fund.
 

 “Section 2.. That in determining the questions of fact to form the basis of the proper exercise of the authority conferred by this act, the Board of Liquidation of the State Debt shall consider full and as nearly accurate information as possible relative to the amounts necessary to pay out and the probable receipts from all sources of revenue, may require reports of the State Treasurer and the State Auditor, or any other official, and when such reports are made, the Board shall indicate its consideration thereof in its resolutions.
 

 “Section 3. That in any case if for any reason or fact, as determined by the Board
 
 *377
 
 of Liquidation of the State Debt, there is any excess in any appropriation or dedication, or in case any unexpected revenue shall be collected for the account of any special or general fund or under any law of this State or as the result of litigation, any such law may be suspended, as herein authorized, in whole or in part, so as to accomplish any limitation upon any appropriation or dedication of any such funds to the amount needed, as determined by the Board of Liquidation of the State Debt, or to the recommendations of Louisiana Tax Commission in its budget of the then current biennium, or to the estimate of receipts by the Legislature in its appropriation or dedication.
 

 “Section 4. That any finding of fact by the Board of Liquidation of the State Debt in proceedings under this act shall be final and conclusive.
 

 “Section 5. That it shall be the mandatory duty of the State Auditor, the State Treasurer, and all other public officers to comply with any resolution of the Board of Liquidation of the State Debt adopted pursuant to the authority of this Act.
 

 “Section 6. That, in exercising the authority herein conferred, no action shall be taken by the Board of Liquidation of the State Debt which will impair the obligation of any contract or divest any vested right.”
 

 Section 15 of Act No. 266 of 1942, which act is the general appropriation bill for the current biennium, contains a proviso or an “exception” which is merely a confirmation, in general terms and in condensed form, of the authority which was attempted to be conferred upon the Board of Liquidation of the State Debt by Act No. 73 of 1936 — thus:
 

 “Section 15. No funds shall be withdrawn from the State Treasury by any State Agency except in accordance with the provisions of this Act, except that the Board of Liquidation of the State Debt may provide funds in addition to those appropriated herein for any State Agency in order to protect the faith and credit of the State or to meet emergencies, as may be provided by law.”
 

 The plaintiff contends and the district court held that these provisions in the act of 1936 and in the 15th section of the act of 1942 are unconstitutional so far as they purport to authorize the Board of Liquidation of the State Debt to make an appropriation or a transfer of money from the State’s general fund to an agency of the State in excess of a specific appropriation made by the Legislature.
 

 The plaintiff’s contentions, stated specifically, are as follows:
 

 First. That the statutes violate the provisions in Section 1 of Article IV of the Constitution of Louisiana, that no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and that no appropriation of money shall be made for a longer term than two years.
 

 Second. That even if the statutes did not violate Section 1 of Article IV of the State Constitution, the statutes would be unconstitutional because of their omission to prescribe standards by which the board
 
 *379
 
 of liquidation should be governed in making appropriations or transfers of the funds of the State.
 

 Third. That the statutes attempt not only to confer legislative functions upon an executive board, in violation of Article II of the Constitution of Louisiana, but attempt also to close the doors of the courts against an investigation of the findings of fact by the board; and that this is violative of the guaranty in Section 6 of the Bill of Rights, or Article I of the Constitution of Louisiana, that the courts shall be open and that every person shall have adequate remedy by due process of law for injury done him.
 

 Fourth. That if the board of liquidation is allowed to exercise the legislative function of making appropriations or transfers of money from the general fund to a state agency, the plaintiff and all other taxpayers of the State may be deprived thereby of their property without due process of law, in violation of Section 2 of Article I of the Constitution of Louisiana and in violation of the Fourteenth Amendment of the Constitution of the United States.
 

 The appellants concede in their brief that if the power which the Legislature undertook to confer upon the Board of Liquidation of the State Debt by the provisions of Act No. 73 of 1936 and Section 15 of Act No. 266 of 1942 is a legislative power or function “the acts are manifestly unconstitutional.” In other words it is not disputed — and could not be successfully disputed — that the Board of Liquidation of the State Debt is an administrative or executive board and is therefore a branch of the executive department of the state government, according to the division of the powers of government among the three distinct departments, namely, the legislative, the executive and the judicial department, by Article II of the Constitution. The admission of the appellants that the statutes in question are manifestly unconstitutional if the power which they purport to confer upon the Board of Liquidation of the State Debt is a legislative power or function, as distinguished from an administrative power or function, is founded upon the declaration in Section 2 of Article II of the Constitution, that no person or collection of persons holding office in any one of the three departments of the state government shall exercise any power properly belonging to either of the two other departments, except in the instances expressly directed or permitted by the Constitution.
 

 The authority which the Legislature by the statutes in question undertook to confer upon the Board of Liquidation of the State Debt is the authority to make all necessary appropriations of money out of the State’s general fund to the several institutions and agencies of the State. To that end Section 1 of Act No. 73 of 1936 purports to authorize the board of liquidation to suspend the provision's of any act of the Legislature providing for the appropriation or dedication of public funds, for such length of time as in the opinion of a majority of the members of the board may be necessary to prevent an impairment of the faith and credit of the State. This section of the act purports also to give the board authority to transfer any sum of
 
 *381
 
 money appropriated by an act of the Legislature from the purpose for which the appropriation was made to any other purpose or purposes deemed necessary by a majority of the members of the board, by increasing any one or more items on the appropriation bill, or by adding new items of appropriation, and by providing that' any such increase or additional appropriation made by the board shall be paid out of the general fund. The provisions of that section and of Section 15 of Act No. 266 of 1942 constitute a complete surrender by the Legislature to the Board of Liquidation of the State Debt of the control of the Legislature over the matter of appropriating the State’s revenue to the several purposes permitted and enumerated in the Constitution.
 

 That the appropriating of the State’s funds is a legislative function is fundamental. It is so recognized in the jurisprudence of all of the States and by all of the law writers on the subject.
 

 One of the best opinions on the subject was rendered by the Supreme Court of Mississippi in a case cited by the appellants in the present case, namely, Colbert v. State, 86 Miss. 769, 39 So. 65, 66, from which we take the following excerpt:
 

 “Under all constitutional governments recognizing three distinct and independent magistracies, the control of the purse strings of government is a legislative function. Indeed, it is the supreme legislative prerogative, indispensable to the independence and integrity of the Legisture, and not to be surrendered or abridged, save by the Constitution itself, without disturbing the balance of the system and endangering the liberties of the people. The right of the Legislature to control the public treasury, to determine the sources from which the public revenues shall be derived! and the objects upon which they shall be expended, to dictate the time, the manner, and the means both of their collection and disbursement, is firmly and inexpugnably established in our political system.”
 

 The doctrine of the case of Colbert v. State was observed in Saint v. Allen, 169 La. 1046, 126 So. 548, 551, where the court,, referring to the separation of the State government into three departments, by Article II of the Constitution, quoted from The Federalist, vol. 1, p. 340, the opinion expressed in an essay by. Madison — thus:
 

 "As the legislative department alone has access to the pockets of the
 
 people, and has in some constitutions full discretion, and in all a prevailing influence over the pecuniary rewards of those who fill the other departments, a dependence is thus created in the latter, which gives still greater facility to encroachments of the former.” [The italics are ours.]
 

 In the latter case, emphasizing the constitutional inhibition that no person or collection of persons holding office in any one of the three departments of the government shall exercise power properly belonging to either of the other departments, we quoted [169 La. loc. cit. 1063 and 126 So. loc. cit. 554] from Washington’s Farewell Address, as published in Sparks’ Writings of Washington, vol. 12, pp. 382-398, thus:
 

 
 *383
 
 “It is important, likewise, that the habit oí thinking in a free country should inspire caution, in those intrusted with its administration, to confine themselves within their respective constitutional spheres, avoiding in the exercise of the powers of one department to encroach upon another. The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real depotism. A just estimate of the love of power, and proneness to abuse it, which predominates in the human heart, is sufficient to satisfy us of the truth of this position. The necessity of reciprocal checks in the exercise of political power, by dividing and distributing it into different depositories, and constituting each the Guardian of the Public Weal against invasions by the others, has been evinced by experiments, ancient and modern; some of them in
 
 our
 
 country and under our own eyes. To preserve them must be as necessary as to institute them. If, in the opinion of the people, the distribution or modification of the constitutional powers be in any particular wrong, let it be corrected by an amendment in the wry which the constitution designates. But let there be no change by usurpation; for, though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed. The precedent must always greatly overbalance in permanent evil any partial or transient benefit which the use may at any time yield.”
 

 In the case of State v. Liberty Oil Co., 154 La. 267, 97 So. 438, which we have referred to and which is cited by both the appellee and the appellants, the court, after deciding that the defendant’s reconventional demand was in fact a suit against the State (154 La. loc. cit. 270, 97 So. loc. cit. 439), gave this additional reason for rejecting the reconventional demand:
 

 “Besides, the amount paid by respondent as a license tax has gone into the public treasury and, presumably, has been appropriated. Its withdrawal from the state treasury is prohibited by the Constitution, ‘except in pursuance of specific appropriation made by law.’ Const. 1921 art. 4, § 1.”
 

 In a very recent case, Peck v. City of New Orleans et al., 199 La. 76, 5 So.2d 508, 522, this court had occasion to consider the prohibition in Section 1 of Article IV of the Constitution against giving an administrative board authority to expend a part of the State’s general fund without a specific appropriation being made by the Legislature. The plaintiff in that case, a taxpayer, enjoined certain state officials and municipal officers from carrying out the provisions of Act No. 84 of 1940, providing for the purchase of voting machines for use in New Orleans. The plaintiff contended that Section 19 of the act, which purported to be a grant of authority to a state board, entitled “State Board to Purchase Voting Machines”, to pay the State’s one-half share of the cost of the machines “without any specific appropriation being made by law”, was violative of Section 1 of Article IV of the Constitution, forbidding the withdrawal of any money from the state treasury except in pursuance of a “specific appropriation made by law.” It
 
 *385
 
 was held, inferentially, (199 La. loc. cit. 119 and 5 So.2d loc. cit. 522) that Section 19 of the statute would be violative of Section 1 of Article IV of the Constitution if that section of the statute undertook to grant to the “State Board to Purchase Voting Machines” the authority to pay the State’s one-half share of the cost of the machines without having a specific appropriation of the State’s share of the cost made by the Legislature. In the opinion rendered in the case it was said:
 

 “* * * we are unable to coincide with the proposition advanced by the plaintiff that Section 19 of Act 84 violates Section 1 of Article 4 of the Constitution because that section purports to grant to the State Board to Purchase Voting Machines the authority to pay the' State’s oné-half share of the cost of the machines without any specific appropriation being made by law. It is our opinion that Section 19 vests in the State Board full authority to purchase all voting machines necessary for use in elections to be held throughout the State. |
 
 Of course, payment for purchases so made
 
 ^
 
 cannot be taken out of the General Fund ''•without the Legislature specifically appropriating, as prescribed by Section 1 of Article 4 of the Constitution, monies to defray the State’s portion of the purchase price and the State Treasurer and Auditor have no right to make any such payments.”
 
 [The italics are ours.]
 

 Inasmuch as the prerogative which the Legislature has undertaken by the statutes in question to confer upon the Board of Liquidation of the State Debt is a legislative power or prerogative, and inasmuch as the Board of Liquidation of the State Debt is an administrative board and is therefore a branch of the executive department of the State government, the statutes are violative of the prohibition in Section 2 of Article II of the Constitution that no person or collection of persons holding office in any one of the three departments of the State government shall exercise power properly belonging to either of the two other departments. The intention of the majority of the members of the board of liquidation to make the proposed transfers of money from the general fund to the State agencies or institutions referred to in the plaintiff’s petition is contrary to the provision in Section 1 of Article IV of the Constitution that no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law. The term “specific appropriation made by law” means an appropriation made by an act of the Legislature, of a specified sum of money for a specified purpose.
 

 The judgment is affirmed.