Dear Ms. Butler:
On behalf of the Treasurer, you requested the opinion of this office concerning La.R.S. 47:322.38, and a request by the Louisiana Stadium and Exposition Authority (the "Authority") that money in the New Orleans Area Tourism and Economic Development Fund (the "Tourism Fund") be disbursed to it. You advised that there is no appropriation that would allow this disbursement.
Prior to the passage of Act 73 of the First Extraordinary Session of 2002 ("Act 73"), La.R.S. 47:322.38 provided that, after passing through the Bond Security and Redemption Fund, the first $3,330,000 of the avails of the tax imposed by La.R.S. 47:321 (the Orleans Parish hotel tax) was to be deposited into the Tourism Fund and be distributed to nine named entities in stated amounts. Any remaining balance in the fund was to then be distributed to the Authority for a local grant program. Any unexpended and unencumbered monies remaining after the local grants were made were to be rolled over and remain to the credit of the Authority for use the next year.
Act 73 amended La.R.S. 47:322.38. Effective July 1, 2002, the avails of the State hotel tax collected in Orleans Parish (after passing through the Bond Security and Redemption Fund) are distributed as follows: the first $2,000,000 is to be paid to the Ernest N. Morial Convention Center Phase IV Expansion Project Fund (the "Project Fund") and the remainder is to be deposited to the new "New Orleans Sports Franchise Fund". Any unexpended and unencumbered monies in the New Orleans Sports Franchise Fund at the end of the fiscal year are to be transferred as follows: first, an amount up to $1,750,000 equal to the amount actually expended by the State for reimbursement to the Charlotte Hornets is to be transferred to the State general fund; then, the remainder of such unexpended and unencumbered monies is to be deposited into the new "New Orleans Area Economic Development Fund" (as opposed to the old "New Orleans Area Tourism and Economic Development Fund") to be administered by the District for use for local grants. Section 2 of Act 73 further provides that effective April 18, 2002, the District shall cease and desist providing grants as authorized in R.S. 47:322.38, which are payable from funds generated during the 2002 fiscal year.
In the current general appropriations act, Act 13 of the 2002 Regular Session ("Act 13"), $2,000,000 of hotel tax proceeds was appropriated to the Project Fund and $6,259,313 was appropriated to the New Orleans Sports Franchise Fund. No monies were appropriated for transfer to the State general fund or to the New Orleans Area Economic Development Fund to be administered by the District. Additionally, no funds were appropriated from the defunct Tourism Fund although the fund has a balance of $2,155,867.60 for the fiscal year ending June 30, 2002 (and more monies will be classified to the eliminated fund prior to August 14th). Since the Tourism Fund no longer exists, your office is unclear on how to dispose of the monies in the Tourism Fund.
Section 2 of Act 73 seems to suggest that the legislature expected monies from the 2001 — 2002 fiscal year to go to the District as it provides as follows:
 "Notwithstanding any provision of law to the contrary, the Louisiana Stadium and Exposition District shall cease and desist providing grants as authorized in R.S. 47:322.38, which are payable from funds generated during the 2002 Fiscal Year, on the effective date of this Section. Notwithstanding any provision to the contrary, the Louisiana Stadium and Exposition District shall use and expend any surplus carryover funds of the district which are not otherwise encumbered, to the extent necessary to fund any shortfall in the contractual obligations of the state to any National Football League or National Basketball Association franchise located in Orleans or Jefferson parishes. The Louisiana Stadium and Exposition District may use and expend any unobligated and unencumbered funds allocated from the New Orleans Area Tourism and Economic Development Fund for the grant program on the effective date of this Section to provide for the contractual obligations if and only if monies from any surplus carryover funds of the district which are not otherwise encumbered are insufficient to fund such obligations. Any remaining grant funds may be used in accordance with the provisions of R.S. 47:322.38."
The District is asking the Treasury to release the money in the Tourism Fund to it, but without an appropriation in Act 13, your office is uncertain as to the proper application of the current statute with respect to this request. Your questions are: Is the language "may use and expend" an appropriation or other sufficient authorization such that the Treasury can release the two- million-plus dollars to the Louisiana Stadium and Exposition District? If not, what should the Treasury do with the money in the Tourism Fund? Under prior law the money in the fund rolled over from year to year but now that the fund has been eliminated from the statutes should it continue to roll over or should it be deposited into the State general fund?
R.S. 39:2(3) defines "appropriation" to mean "an authorization by the legislature to a budget unit for a program to expend from public funds a sum of money, for purposes designated . . ." An appropriation is the setting apart of public moneys by legislative vote or enactment to be applied to specific objects of public expenditures. Fuselier v. StateMarket Commission, 259 La. 185, 249 So.2d 459 (1971), citing Trustees ofRutgers College v. Morgan, 71 N.J.L. 663, 60 A. 205 (1905). The term "specific appropriation made by law" means an appropriation made by an act of the Legislature, of a specified sum of money for a specified purpose. Carso v. Board of Liquidation of State Debt, 205 La. 368,17 So.2d 358 (1944). The legislature must designate the purpose and amount with sufficient particularity to properly identify the use to which the funds are to be put. Carso, supra. Op.Atty.Gen. 94-408.
In the opinion of this office, Act 73 is substantive law, it is not an appropriation. Section 2 is not an authorization to spend a specified sum of money for a specified purpose. It is well established that an appropriation bill may not incorporate substantive law. Henry v.Edwards, 346 So.2d 153 (La. 1977); Ops.Atty.Gen. 89-25, 89-230, 93-493, 93-594, 94-549.
If, as you advise, there is no appropriation from the Tourism Fund in Act 13 nor any other appropriation act, the monies in the Tourism Fund cannot be withdrawn from the State Treasury. La. Const. Art. III, §16; La. Const. Art. VII, § 10.
As of June 30, 2002, the last day of the State's fiscal year, R.S.47:322.38(D) provided that monies in the Tourism Fund remained in the Tourism Fund at the end of the fiscal year. Accordingly, any monies that were in the Tourism Fund at the end of the fiscal year remain in the Tourism Fund and do not revert to the State general fund at the close of the 2001-2002 Fiscal Year. However, on July 1, 2002, Section 1 of Act 73 became effective. Among other things, Section 1 deletes the Tourism Fund and replaces it with the Project Fund. It is the opinion of this office that any monies in the Tourism Fund on July 1, 2002 should be transferred to the Project Fund. Act 73 does not provide that monies in the Project Fund remain therein at the end of the fiscal year; accordingly, monies in the Project Fund, it not appropriated and spent during a fiscal year, will revert to the State general fund at the close of fiscal year.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ MARTHA S. HESS Assistant Attorney General
RPI:MSH:jv
DATE RELEASED: August 13, 2002