IN RE DISBARMENT OF CLARENCE B. MELDRUM.
STATE OF IOWA, complainant-appellee, v. CLARENCE B. MELDRUM,
respondent-appellant.

No. 48016.

(Reported in 51 N.W.2d 881)

Маrch 4, 1952.

Rehearing Denied Мaу 9, 1952.

Ervin A. Hutchison, of Sioux City, for appellant.

Harold Newcomb, of Des Moines, special counsel appointed by the court, Robert L. Larson, Attorney General, and Glen L. Gray, Assistant Attorney General, for appellee.

Hays, J.—On April 14, 1951, there was an accusation filed in the District Court of Pottawattamie County, charging Clarence B. Meldrum with violating chapter 610, Code, 1950, and more specifically with soliciting legal business for himself. It asked that his license to practice law in Iowa be revoked or suspended. After a hearing by a special court, as provided for in chapter 610, Code, 1950, his license was revoked for one year and he has appealed.

The accusation was prepared by Harold Newcomb, Chairman of the Committee on Professional Ethics and Conduct of the Iowa State Bar Association, under orders from Vernon John-

son, one of the Judges of the Fifteenth Judicial District. There are five instances charged therein, where it is alleged that the respondent solicited legal business for himself. The accusation was filed by Mr. Newcomb on April 14, 1951. On April 17, 1951, it was ordered by Judges R. Kent Martin and Vernon Johnson that a copy of the accusation be served upon the respondent and that he answer by May 8, 1951. Notice was duly served, and on the seventh day of May he filed a motion to dismiss on the grounds that chapter 610, Code, 1950, had not been complied with, and that the charges were frivolous. This motion was overruled by the special court and answer was filed which in effect was a general denial and a restatement of the matters urged in the motion to dismiss.

Upon the commencement of the hearing the following statements were made:

"(By Mr. Hutchison) The respondent admits certain indiscreet professional conduct in violation of the canons of ethics of the legal profession which might warrant disciplinary action, but in mitigation thereof states to this court that the same occurred solely through inadvertence, mistake or error, through local practices, and without any criminal intent or motive.

"(By Mr. Gray) The State at this time will confine itself to the charge of suspension only and withdraw from the court the question of any disbarment or revocation of license, and naturally we would desire to introduce some evidence after the respondent has introduced his in connection with the matter, if the court so desires to hear it.

"(By the Court) The Court would want to be advised as to the conduct of the respondent and will hear statement or accept evidence on this matter. I think we will first hear from the respondent."

No objections were made to this announced procedure and the respondent was sworn as a witness.

I. Respondent assigns as error: "A generalized opening statement of respondent, admitting certain indiscreet and unethical conduct which might justify disciplinary action, coupled with explanation of such conduct on a theory other than guilt, does not justify a finding by the court that respondent admitted 'guilt justifying suspension of license.' "

If by this assignment respondent means that the order of suspension was entered upon the basis of the statement made at the commencement of the case, there is no merit therein. The record shows that a full and complete hearing was had before the court with complete freedom to both parties to produce any and all evidence desired.

■■ If respondent means it was error to require him to first put in his evidence, this likewise has no merit. It was clear from the statement by Mr. Gray and by the court at the very outset of the hearing that respondent's statement was assumed to be an admission of misconduct and a desire to show mitigating circumstances. No objection was interposed by respondent, who was immediately sworn and proceeded to give his testimony. It appears from the arguments that respondent's statement was made after several hours conference with attorneys for the State and after they had agreed to withdraw the request for disbarment. It ill behooves respondent to now attempt to repudiate the statement. Furthermore, it is a well-established rule that the theory under which the case was tried in the lower court will be the theory upon which the appeal is based. Zieman v. World Amusement Serv. Assn., 209 Iowa 1298, 228 N.W. 48; Larson v. City of Des Moines, 216 Iowa 42, 247 N.W. 38. See also 7 C. J. S., Attorney and Client, section 33a(1).

II. Appellant further contends that in the absence of corrupt or dishonest motives acts of an attorney in violation of professional ethics are excused if in accord with established customs. This, likewise, is without merit.

The charges in the accusation are "soliciting legal business for himself." The record shows that in addition to practicing law, appellant was also carrying on a business of a professional bondsman (more about this later on). He alleges that such business was a custom among the attorneys in that county and, though not good ethics, such custom excuses him. He is not charged with being a bondsman. This testimony relative thereto was admissible only as it may have had a bearing upon the charges in the accusation. In re Complaint against Condon, 166 Iowa 265, 271, 147 N.W. 769, is cited and relied upon by appellant. The question there was an illegal practice in the handling of commissions on fines. The court said such appeared to be the

custom and in the absence of a demand and a refusal of payment it was not sufficient to warrant a revocation of a license to practice law. It is not controlling here.

In the instant case a specific violation of a statute is charged, section 610.24(5). It is fundamental that custom may not legalize what the legislature has declared to be illegal. Furthermore, appellant does not allege or offer proof of the existence of any custom dealing with the specific charges in the accusation.

III. Appellant also asserts that the accusation was not filed in accordance with the requirements of chapter 610, Code, 1950, and is in violation of the due-process clause of the State and Federal Constitutions. The specific objection is based upon the fact that the accusation was filed by Mr. Newcomb before it had been approved by the court as to its sufficiency. We find no provision in chapter 610 so providing. It appears that after it was filed, two judges of the district ordered that a copy thereof be served upon the appellant and that he be required to answer. This is clearly an approval thereof as far as its sufficiency in stating a cause of action is concerned. Due process, as used herein, is nothing more nor less than granting to an individual the benefits of the established and recognized law of the land. This, appellant was accorded. We find no error.

IV. The principal error assigned goes to the sufficiency of the evidence. This type of an action is reviewed de novo here and requires that the record be fully considered. In re Disbarment of Cloud, 217 Iowa 3, 250 N.W. 160; In re Disbarment of DeCaro, 220 Iowa 176, 262 N.W. 132.

Appellant is forty-three years of age and was admitted to practice law in this State in 1941. Thereafter he had served in the Judge Advocate's Department of the Army and two years with the Veterans' Bureau. He commenced his practice at Council Bluffs in 1947. He states that he has some civil practice and an extensive criminal practice, in fact more than he can take care of. For more than two years he has conducted a bond business in addition to the practice of law and signed many bail and appearance bonds for parties charged with a crime. It appears that he is being accepted as a bondsman by the Municipal

Court at Council Bluffs. While there is a dispute in the record, it appears that he makes it a practice to call at the city jail in the early morning for information as to the arrests made during the night, and as bondsman and/or attorney has free access to the cell blocks of the jail. He carries a card which bears the name of Clarence B. Meldrum, attorney at law, with his office address and office and residence telephone number. No mention is made therein of his business as a bondsman. As to this card he states:

"When I call on these men at the jail I usually give them my card when I do not know the person, and due to the volume of business which I had, people in the tavern business would call me when somebody would call for a bond, they would ask me to go and see them because they were a friend of theirs, and when I would go to see the person, when I was not personally acquainted with them, I would give them my card by way of introduction."

The record does not show the percentage of cases where he acted as a bondsman and also appeared as an attorney, but from information obtained during the argument in this court it appears to be quite substantial.

The accusation specifically charges that he solicited legal business from five individuals: John Anderson, Delbert Potter, Alfred Jackson, Harold M. Shrader and Robert Betts. All of them were inmates of the jail at the time in question.

As to John Anderson, at time of trial an inmate in the penitentiary: He states that he never knew appellant until he came to see him at the county jail, but that he had asked the jailer to get him an attorney. This is verified by the jailer.

As to Delbert Potter: He denies that appellant solicited his legal business. However, in January 1951 he signed a statement (Exhibit 7) wherein he states, "While I was being held in the jail I was approached by a man who identified himself to be Mr. Clarence B. Meldrum, an attorney. He asked me if I had signed any statements and I told him I had signed a statement in the office of the county attorney and he told me not to sign any more statements unless he was present. He asked me if I could raise the money for the bail bond if he could arrange to

get me out on bail. I did not know Mr. Meldrum before and I did not request that he contact me or represent me, nor have any members of my family contacted him to represent me." He stated as a witness that the statements made in Exhibit 7 "were true at the time and are true now."

As. to Alfred Jackson: He did not appear as a witness. One Carl W. Kretschmer, a bartender, states that at the request of appellant he listened in on a conversation between Jackson and appellant, at his place of business, in which Jackson was asked if appellant had solicited his legal business and Jackson said not. This conversation took place a few weeks before the trial.

As to Robert Betts: As a witness for appellant he stated he had been arrested on an "O.M.V.I." charge and while in the jail appellant came to him and asked if he wanted to be out on bail; he said "No", as he wanted to see his own attorney. On cross-examination it appeared that appellant called upon him the same day he was arrested—"he told me that the officers had $56.68 of my money and a bond would cost $50"; he did not represent him in any trial; he had not known of appellant prior to the visit at the jail.

As to Harold Shrader, there is nothing in the record bearing upon this charge.

Appellant represented one Russell Schley, and as to him the record shows the following: A. J. Hoden, a Lieutenant on the City Police Force, testified that appellant called at the jail about 7 a.m. and asked for Schley, who had been arrested the night before. The witness stated that he questioned Schley, who told him he had been alone when arrested, saw no one at the accident who knew him, had not communicated with anyone since the arrest and did not call for a lawyer. Exhibit 8, being a statement signed by Schley, to about the same effect as the witness' statement, was received in evidence. After the statement was signed, Schley was permitted to see Meldrum, or rather Meldrum to see Schley.

Appellant as a rebuttal witness and also on his direct examination denied, specifically and generally, that he had solicited law business. As to his getting in contact with the various parties named in the accusation he states that he was called by

other parties to see them, or was contacted by them when he was visiting with other prisoners at the jail. Evidence was offered as to other clients, who testified that he had not solicited their business; also there is testimony by two attorneys, practicing at Council Bluffs, to the effect that they have had dealings with appellant and found him to be trustworthy. One, however, stated that he had heard rumors to the effect that he was soliciting business.

The foregoing fairly represents the evidence that was before the court at the close of the case.

■■ Appellant is charged with violating section 610.24, Code, 1950. This section is entitled "Grounds for revocation" and provides, subsection (5), "Soliciting legal business for himself or office, either by himself or representative * * *." The right to practice law is not a natural or constitutional right, but is in the nature of a privilege or franchise. 7 C. J. S., Attorney and Client, section 4(b); In re Disbarment of Cloud, 217 Iowa 3, 250 N.W. 160. The right to disbar or suspend the license of an attorney is inherent in the courts and may also be regulated by statutes, while in the exercise of their fundamental right to control the conduct of attorneys the courts must not act in an arbitrary manner. In the exercise of this power the court owes a duty to the attorney in question, to the members of the Bar in general, and to the public. In the exercise of this right it is the rule, and correctly so, that the evidence be clear and convincing. In re Disbarment of DeCaro, supra.

■ Appellant contends that the suspension order is based upon the fact that he was acting as a bondsman; that, while under sections 621.7 and 682.5, Code, 1950, attorneys are declared to be ineligible as sureties upon official bonds, the statutes do not make such acts illegal. Other than to say that this type of action by an attorney does not have our stamp of approval, we do not pass upon the question as it is not involved here. Under the record it is abundantly clear that under the guise of a bondsman, in his visits to prisoners in the jails, it was constantly being used as a source of legal business by the appellant. The special court hearing this matter was comprised of extremely able Judges. They were cognizant of their duty not only to the appellant, but to the members of the Bar and the public in gen-

.eral. Appellant was accorded every right to which he was entitled, and we are satisfied that the decision they rendered came as the result of careful examination of the record. The decision is amply supported by the record and we find no error therein.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.