**WEBSTER COUNTY BOARD OF SUPERVISORS, Plaintiff,**

v.

**Edward J. FLATTERY, Chief Judge, Second Judicial District, State of Iowa, Defendant.**

No. 60825.

Supreme Court of Iowa.

July 26, 1978.

Herbert R. Bennett, of McCarville, Bennett, Beisser, Ferguson & Wilke, Fort Dodge, for plaintiff.

William J. Thatcher, County Atty., and David J. Lawler, Fort Dodge, for defendant.

REYNOLDSON, Justice.

This proceeding requires us to explore the reach of inherent powers of the judicial

department as a separate and independent branch of government.

Plaintiff Webster county board of supervisors filed petition for writ of certiorari asserting defendant, as second judicial district chief judge, acted illegally in issuing certain orders for the continued employment of an investigator attached to the county attorney's office. We granted the petition, stayed the effect of defendant's orders pending this decision, and now annul these orders for reasons hereafter stated.

Because there was no hearing below, we have only the facts disclosed by those allegations of the petition which defendant's answer admits.

December 16, 1975, plaintiff board approved the Webster county attorney's application to hire Frank Gargano as special investigator for $10,750, commencing January 1, 1976, and continuing to June 26, 1977. This employment was under a federal grant administered by the Iowa Crime Commission.

In February, 1977, Webster county attorney submitted to plaintiff his annual budget for the fiscal year beginning July 1, 1977, which included the continued employment of Gargano at a $12,000 annual salary. Plaintiff struck the proposed expenditure for the special investigator. An admitted allegation of its petition asserted it later "met with both the County Attorney and Frank Gargano and explained its reason for the action taken in that regard."

About June 15, 1977, plaintiff received what it terms a "letter-order" from defendant, handwritten and dated June 14, 1977:

"Dear Friends:

"As everyone knows our criminal system in Webster Co. is overloaded. We must try to reduce this overload by setting serious priorities.

"We definitely need to have the continued services of our investigator Frank Gargano.

"I therefore make an order employing Frank for another year at 11,000/00 per year.

With every good wish,
Ed Flattery C. J."

June 15, 1977, the following order executed by defendant was filed:

"UPON THE APPLICATION of William J. Thatcher, Webster County Attorney, the Court orders the Webster County Board of Supervisors to employ Frank Gargano as an investigator to aid the Webster County Magistrate Court and to investigate cases for the Webster County Attorney.

"IT IS FURTHER ORDERED that Mr. Gargano's salary shall be set at eleven thousand dollars ($11,000) per year, which shall be paid out of the Webster County Court Fund.

"IT IS FURTHER ORDERED that the effective date for this Order and for the employment of Mr. Gargano shall be June 26, 1977."

June 24, 1977, defendant executed and filed an "Amendment to Order" which recited:

"Whereas, the Webster County Board of Supervisors has refused to rehire Frank Gargano as an investigator in the office of the Webster County Attorney, and,

"Whereas, the undersigned deems the position necessary to help unclog the Webster County Court Docket and to speed justice, and,

"Whereas, the undersigned, as Chief Judge of the Second Judicial District of Iowa, by virtue of superintending powers vested in me over the counties in this District, and the prompt dispatch of Judicial business, do hereby enter the following order:

ORDER

"1. Effective July 1, 1977, Frank Gargano is employed as an investigator for Webster County Attorney William Thatcher, at a salary of $11,000 per year, payable from the Webster County Court Fund.

"2. The Clerk of this Court is directed to certify a copy of this order to the Webster County Auditor."

Plaintiff board asserts defendant had no jurisdiction over it or the subject matter of the controversy. It contends defendant's orders were illegal because they violated the concept of separation of powers between the legislative and judicial branches of government and exceeded the inherent powers of the court.

Defendant's brief concedes plaintiff board had statutory power to fix compensation of all county officers whose salary is not otherwise provided by law, § 332.3(10), The Code, 1977; to approve hiring of assistants for county officers including the county attorney, § 341.1; and to control the county budget, § 344.10. But defense counsel contends defendant's orders were legal by virtue of his inherent power coupled with rule 377, Rules of Civil Procedure (chief judges "shall exercise continuing administrative supervision within their respective districts over all district courts, judges, officials, and employees thereof for the purposes stated in rule 373") and rule 373, R.C.P. ("The purpose of all rules for court administration shall be to provide for the administration of justice in an orderly, efficient and effective manner, in accordance with the highest standards of justice and judicial service.").

## I. *Scope of review.*

This controversy arrives here pursuant to a writ of certiorari issued upon plaintiff's petition filed in this court. Our review rules relating to certiorari are summarized in *State v. Cullison,* 227 N.W.2d 121, 126–127 (Iowa 1975). The action is by ordinary proceedings, which means it is a law action.

While ordinarily our review is not *de novo,* there are exceptions. *Id.* For example, when violation of basic constitutional safeguards is raised, an appellate court must make its own evaluation of the totality of circumstances under which the ruling on those constitutional rights was made. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973); *Long v. Brewer,* 253 N.W.2d 549, 552 (Iowa 1977); *State v. Boren,* 224 N.W.2d 14, 15 (Iowa 1974), cert. den., 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975); *State v. Cooper,* 217 N.W.2d 589, 595 (Iowa 1974); *State v. Niccum,* 190 N.W.2d 815, 824 (Iowa 1971).

In the case before us, the only facts are those admitted in the pleadings, as we have indicated. We consider recitals in the several orders not to be factual, but conclusory in nature. The basic issue could be disposed of as a matter of law. However, we believe our rule for review of these controversies should rest on a broader base.

Where, as here, a constitutional issue relating to inherent power exercised by a lower tribunal is presented, this court shall make its own evaluation, based on the totality of circumstances, to determine whether that power has been exercised appropriately. This principle shall apply whether the matter comes before us in certiorari, as in this instance, or upon petition for review grounded on our supervisory jurisdiction.

## II. *Separation of powers.*

This controversy proceeds against the backdrop of the following provisions of the Iowa Constitution:

Art. III, § 1:

"The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

Art. V, § 1:

"The Judicial power shall be vested in a Supreme Court, District Courts, and such other Courts, inferior to the Supreme Court, as the General Assembly may, from time to time, establish."

Art. V, § 4, as amended:

"The Supreme Court * * * shall have power to issue all writs and process necessary to secure justice to parties, and shall exercise a supervisory and adminis-

trative control over all inferior Judicial tribunals throughout the State."

Art. V, § 6:

"The District Court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law."

Art. III, § 1, supra, incorporates the historic concept of separation of powers to safeguard against tyranny, developed in early philosophical and political writings. See *Matter of Salary of Juvenile Director*, 87 Wash.2d 232, 237–243, 552 P.2d 163, 167–170 (1976); I Baron De Montesquieu, The Spirit of Laws 188 (7th ed. 1778); Ervin, *Separation of Powers: Judicial Independence*, 35 Law & Contemp.Prob. 108, 109–110 (1970).

The authors of the United States Constitution, carefully dividing governmental powers, were familiar with the struggle for an independent judiciary in England. See *Zylstra v. Piva*, 85 Wash.2d 743, 752–754, 539 P.2d 823, 828–830 (1975) (Utter, J., concurring). We find in a Federalist paper usually attributed to Madison the following caution:

"It is equally evident that the members of each department [of government] should be as little dependent as possible on those of the others for the emoluments annexed to their offices. Were the executive magistrate, or the judges, not independent of the legislature in this particular, their independence in every other would be merely nominal."

—The Federalist, 344 (Ford ed. 1898)

Of course, at their apogee the orbits of power sometimes fade and overlap:

"In the nature of things, there is no high wall or definite line of demarcation between the different governmental departments. Necessarily they gradually merge and blend into each other. Administrative officials must, on numerous occasions, in practice (subject to review by the courts), act judicially. Occasionally administrative functions to some degree must be exercised by courts. But in the main the three classes of governmental powers are separate and distinct. (citations)"

—*In Re Appeal of Beasley Bros.*, 206 Iowa 229, 233, 220 N.W. 306, 308 (1928) See *State v. Van Trump*, 224 Iowa 504, 506–509, 275 N.W. 569, 570–572 (1937); *In re Salaries for Probation Officers of Bergen County*, 58 N.J. 422, 425, 278 A.2d 417, 418 (1971).

■ Insofar as constitutional interpretations and adjudication of controversies are concerned, it is for the judicial department to determine whether any department has exceeded its constitutional functions. See *Luse v. Wray*, 254 N.W.2d 324, 327 (Iowa 1977); cf. *Welden v. Ray*, 229 N.W.2d 706, 710 (Iowa 1975).

This court has consistently recognized and guarded the separation of powers doctrine embedded in the Iowa Constitution. We have repeatedly declined to legislate. See, e. g., *State v. Wedelstedt*, 213 N.W.2d 652, 656–657 (Iowa 1973); *Hansen v. Haugh*, 260 Iowa 236, 241, 149 N.W.2d 169, 172 (1967). We have rejected the legislature's offers to exercise legislative functions when unaccompanied by standards or other safeguards. See cases collected, *Warren County v. Judges of Fifth Jud. Dist.*, 243 N.W.2d 894, 898–901 (Iowa 1976). We have struck down as unconstitutional a statute encroaching upon the pardoning power of the governor. *Slater v. Olson*, 230 Iowa 1005, 1009, 299 N.W. 879, 881 (1941).

■ Each department of government must be and remain independent if the constitutional safeguards are to be maintained. For the judiciary to play an undiminished role as an independent and equal coordinate branch of government nothing must impede the immediate, necessary, efficient and basic functioning of the courts. *Deddens v. Cochise County*, 113 Ariz. 75, 77–78, 546 P.2d 811, 814 (1976); *Smith v. Miller*, 153 Colo. 35, 39–41, 384 P.2d 738, 741 (1963); *McAfee v. State ex rel. Stodola*, 258 Ind. 677, 681–682, 284 N.E.2d 778, 782 (1972); *Noble County Council v. State*, 234 Ind. 172, 180–182, 125 N.E.2d 709, 713–714 (1955);

*O'Coin's, Inc. v. Treasurer of County of Worcester*, 362 Mass. 507, 509–511, 287 N.E.2d 608, 611–612 (1972); *Judges for Third Judicial Cir. v. County of Wayne*, 386 Mich. 1, 14, 190 N.W.2d 228, 231 (1971), cert. den., 405 U.S. 923, 92 S.Ct. 961, 30 L.Ed.2d 794 (1972); *State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99, 101 (Mo.1970); *State ex rel. Browman v. Wood*, 168 Mont. 341, 345, 543 P.2d 184, 187 (1975); *State ex rel. Edwards v. Murray*, 48 Ohio St.2d 303, 305, 358 N.E.2d 577, 579 (1976); *Zylstra v. Piva*, supra, 85 Wash.2d at 749–750, 539 P.2d at 827; *State v. County Court of Kenosha County*, 11 Wis.2d 560, 576–577, 105 N.W.2d 876, 885 (1960); Annot., Power of Court—Funds for Judicial Purposes, 59 A.L. R.3d 569, 575 (1974).

### III.  Inherent power.

■ From the basic premise just articulated it necessarily follows the judiciary is vested with inherent power to do whatever is essential to the performance of its constitutional functions. *Id.*

> "It was certainly never intended that any one department, through the exercise of its acknowledged powers, should be able to prevent another department from fulfilling its responsibilities to the people under the Constitution."
>
> —*O'Coin's, Inc. v. Treasurer of County of Worcester*, supra, 362 Mass. at 511, 287 N.E.2d at 612

■ Of course, harmonious cooperation among the three branches of government is fundamental to our system of government. Only if this cooperation breaks down may it become necessary for the judiciary to exercise inherent power to sustain its separate identity and existence, *Zylstra v. Piva*, supra, 85 Wash.2d at 750, 539 P.2d at 827, and to provide personnel, facilities, or other requirements indispensable for performance of its inherent and constitutional functions. *State ex rel. Weinstein v. St. Louis County*, supra, 451 S.W.2d at 102; Annot. supra, 59 A.L.R.3d at 575.

■ At the same time, courts should be cognizant it is not the judicial department which historically allocates available

government funds. An unreasoned demand for budgetary consideration is a threat to the image of and public support for the courts. In the last analysis, the citizenry will be final arbiters of interbranch disputes. A usurpation of powers by any governmental department ultimately will be sensed and corrected by the public. Thus it is incumbent upon a court invoking inherent power to secure indispensable goods, facilities or services to do so in a manner which clearly communicates and demonstrates to the public the grounds for the court's action. *Matter of Salary of Juvenile Director*, supra, 87 Wash.2d at 248–251, 552 P.2d at 172–174; C. Baar, *Separate But Subservient: Court Budgeting in the American States*, 144–147 (1975); comment, *Judicial Power—The Inherent Power of the Courts To Compel Funding for Their Own Needs*, 53 Wash.L.Rev. 331 (1978); comment, *Court Finance and Unitary Budgeting*, 81 Yale L. Journal 1286, 1287–1291 (1972).

In *O'Coin's*, supra, 362 Mass. at 515–516, 287 N.E.2d at 615, the Supreme Judicial Court of Massachusetts cautioned:

> "We are mindful that exercise of this inherent power is a duty which must be borne responsibly. A spirit of mutual cooperation among the legislative, executive, and judicial departments is unquestionably the people's best guaranty of constitutional government. It is therefore incumbent upon members of the judicial department to proceed cautiously, and with due consideration for the prerogatives of the executive department and the Legislature, whenever exercise of an inherent judicial power would bring us near the sphere of another department.
>
> "It has been wisely observed: 'The very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods. * * * [Only w]hen * * * [established] methods fail and the court shall determine that by observing them the assistance necessary for the due and effective exercise of its own functions cannot be had, or when an emergency

arises which the established methods cannot or do not instantly meet, then and not till then does occasion arise for the exercise of the inherent power.' *State ex rel. Hillis v. Sullivan,* 48 Mont. 320, 329, 137 P. 392, 395. See *Wayne Circuit Judges v. Wayne County,* 383 Mich. 10, 39, 42–44, 172 N.W.2d 436 (separate opinion by Adams, J.); *Leahey v. Farrell,* 362 Pa. 52, 59–60, 66 A.2d 577."

■ But a court should not be required to withhold utilizing inherent power until the court is incapacitated:

"We hold that the test of reasonableness does not require the trial judge to sit by until his court has ceased to function before acting. We hold he is acting within reason when he takes steps to forestall foreseeable difficulties which are imminently threatening the functions of his court."

—*McAfee v. State ex rel. Stodola,* supra, 258 Ind. at 682, 284 N.E.2d at 782

At the highest levels of government the harmonious cooperation above referred to ordinarily prevails. These issues most often arise where, as in the case before us, local governmental units exercising legislative power collide with state courts.

The inherent power to compel compensation for an attorney appointed to represent an indigent defendant in a criminal case was recognized early in the history of this court. *Hall v. Washington Co.,* 2 Greene Iowa Reports, 473, 476 (1850) ("The exercise of judicial power, in order to effectuate the common and statute law, frequently becomes necessary, and must exist incidentally. By virtue of such power, auditors, commissioners, masters in chancery, &c., are appointed and act, and proper compensation is awarded to them.").

More than a decade later, an Iowa trial court appointed a special prosecutor when the district attorney for Polk County was absent from the state. Sued for appointee's compensation, the county claimed trial court had no power to make the appointment. This court analyzed the judiciary's inherent power:

"The power is invested in the court. It is a part of its inherent power—a power necessary for its own protection and existence, essential to the administration of justice and the enforcement of the laws—finding its support in the same reasoning which authorizes a court to punish for contempt, to appoint ministerial or police officers to carry out its mandates and other similar acts. * * * Our courts are not thus powerless. The public business is not to be left thus to suffer. A court possessing such jurisdiction is not limited to the very letter of the charter of its power. The charter gives it life. Of course, it has the right and power to preserve this life. The vital machinery · cannot be kept in motion without officers, and for the very preservation of the life of the court, the protection of the charter of its existence, these necessary officers may be appointed, temporarily, the regular ones being absent. A prosecutor is one of these officers, and therefore he may be appointed. And the same reasoning might be used in relation to the welfare of the State and the necessity of maintaining and vindicating the supremacy of the law."

—*White v. Polk County,* 17 Iowa 413, 414–415 (1864)

In *Seaton v. Polk County,* 59 Iowa 626, 628, 13 N.W. 725, 726 (1882), the Iowa court, in the circumstances disclosed, refused to hold defendant county was liable to compensate additional counsel to assist the district attorney:

"In the case before us the court had no such [inherent] power, because the district attorney was present, and his competency to perform the duties of his office must be presumed * * *. *There was no reason, therefore, to call into action the inherent power of the court in order to prevent the failure of justice.*" (emphasis supplied)

In a different situation the court upheld the exercise of inherent power to appoint an assistant prosecuting attorney, stating:

"That the necessity therefor will seldom arise does not prove the want of

authority, but that it should be cautiously exercised. The object to be obtained in any event is the more effective administration of justice."

—*State v. Tyler*, 122 Iowa 125, 129, 97 N.W. 983, 985 (1904)

More recently, this court has affirmed the inherent power of the district court to adopt rules for the management of cases in absence of statute, *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 568–569 (Iowa 1976), and the power to issue writs of prohibition. *Pottawattamie Cty. Dept. of Social Serv. v. Landau*, 210 N.W.2d 837, 840 (Iowa 1973). It consistently has applied its inherent judicial power to license and discipline lawyers. *Committee on Professional Ethics v. Bromwell*, 221 N.W.2d 777, 780 (Iowa 1974); see *In re Meldrum*, 243 Iowa 777, 784, 51 N.W.2d 881, 884 (1952).

In other jurisdictions appellate courts have applied or at least recognized the availability of inherent power to procure indispensable personnel, equipment and facilities. See, e. g., *Deddens v. Cochise County*, supra, 113 Ariz. at 77–78, 546 P.2d at 814; *Rappaport v. Payne*, 139 Cal.App. 772, 775, 35 P.2d 183, 184 (1934); *Smith v. Miller*, supra, 153 Colo. at 41–42, 384 P.2d at 741–742; *People v. Randolph*, 35 Ill.2d 24, 28–29, 219 N.E.2d 337, 340 (1966); *McAfee v. State ex rel. Stodola*, supra, 258 Ind. at 682–683, 284 N.E.2d at 782–783; *O'Coin's, Inc. v. Treasurer of County of Worcester*, supra, 362 Mass. at 515, 287 N.E.2d at 615; *Judges for Third Judicial Cir. v. County of Wayne*, supra, 386 Mich. at 14–32, 190 N.W.2d at 231–239; *State ex rel. Weinstein v. St. Louis County*, supra, 451 S.W.2d at 102; *State ex rel. Browman v. Wood*, supra, 168 Mont. at 345–349, 543 P.2d at 187–189; *State v. Davis*, 26 Nev. 373, 377–381, 68 P. 689, 690–691 (1902); *State ex rel. Edwards v. Murray*, supra, 48 Ohio St.2d at 304–305, 358 N.E.2d at 578–579; *Zylstra v. Piva*, supra, 85 Wash.2d at 747–749, 539 P.2d at 826–827; *State v. County Court of Kenosha County*, supra, 11 Wis.2d at 576–577, 105 N.W.2d at 885.

IV. *Analysis of case at bar.*

With these concepts in mind we further analyze the case before us.

Plaintiff county board of supervisors is the legislative body in the county and exercises legislative powers delegated to it by the state legislature. *Mandicino v. Kelly*, 158 N.W.2d 754, 761 (Iowa 1968). Although it had statutory authority to approve hiring Gargano and authorize his salary, §§ 332.-3(10), 341.1, and 344.10, The Code, its refusal to act prompted defendant's orders. The clash is the classic one between a state court and subdivision of the state wielding delegated legislative power.

■ The first barrier to a meaningful disposition of this controversy is lack of an evidentiary record to support defendant's conclusions and orders. In absence of exigent circumstances requiring prompt action to preserve the court's operation, the question of the court's inherent power ordinarily should be accompanied with due process essentials of notice and opportunity to be heard. See *Smith v. Iowa Employment Security Commission*, 212 N.W.2d 471, 472 (Iowa 1973); *Gottschalk v. Sueppel*, 258 Iowa 1173, 1181, 140 N.W.2d 866, 870 (1966).

In other jurisdictions in which these controversies have arisen, notice and hearing have been provided in proceedings instituted by an original action seeking declaratory and injunctive relief, *McAfee v. State ex rel. Stodola*, supra; *Judges for the Third Judicial Cir. v. County of Wayne*, supra; by writ of mandamus, *Smith v. Miller*, supra; *O'Coin's, Inc. v. Treasurer of County of Worcester*, supra; by special action, *Deddens v. Cochise County*, supra; by *quo warranto*, *State ex rel. Weinstein v. St. Louis County*, supra; and by original action invoking superintending jurisdiction of the supreme court, *State v. County Court of Kenosha County*, supra.

The *ex parte* jurisdiction of a court to make an order under its inherent judicial power, to notify those affected, and to enforce its order by contempt has been confirmed where there is a remedy by appeal and grant of stay. *State ex rel. Edwards v. Murray*, supra.

But other decisions indicate when a court proposes to invoke the power on its own motion, the better practice is to make a detailed fact-finding and proposed order, file the same with an order to show cause why the proposed order should not be entered, serve copies on those affected, and provide opportunity for hearing. *In Re Courtroom, etc., Circuit Court, Milwaukee County*, 148 Wis. 109, 134 N.W. 490 (1912); *State v. County Court of Kenosha County*, supra, 11 Wis.2d at 577–578, 105 N.W.2d at 885; see *Smith v. Miller*, supra, 153 Colo. at 42–43, 384 P.2d at 742.

Because such procedures were not followed this controversy surfaces here in a factual vacuum and poorly postured for meaningful adjudication.

A second difficulty is presented by the question whether investigator Gargano could be considered a court-attached or judicial department employee. If not, inherent judicial power to appoint him is subject to serious question.

We have no doubt that trial court, even absent § 336.3 authorizing such procedure, could under its inherent power appoint a prosecuting or acting county attorney to perform those county attorney duties essential to the criminal justice system. *State v. Tyler*, supra; *White v. Polk County*, supra. The county attorney is a quasi-judicial officer. *Blanton v. Barrick*, 258 N.W.2d 306, 308 (Iowa 1977); *Wilhelm v. Turner*, 298 F.Supp. 1335, 1338 (S.D.Iowa 1969), cert. den., 401 U.S. 947, 91 S.Ct. 919, 28 L.Ed.2d 230 (1971); *Application of Schragger*, 58 N.J. 274, 278–279, 277 A.2d 212, 215 (1971).

There is authority for holding the investigatory functions of a prosecuting attorney are quasi-judicial, at least to the extent of extending judicial immunity protection. *Wilhelm v. Turner*, supra. But we have described other public officers or peace officers charged with investigative duties as "nonjudicial officers" to whom the protection should not extend. *Vander Linden v. Crews*, 205 N.W.2d 686, 691 (Iowa 1973).

Assuming, arguendo, investigator Gargano was performing quasi-judicial functions, we have no evidence or finding of specific facts to support the court's conclusions his services were necessary "to investigate cases" and "to help unclog the Webster County Court Docket and to speed justice." We would be assisted by a description of the overload, the specific duties of Gargano, and why his services could not be performed by the sheriff and his deputies or the B.C.I. In short, there is before us no factual record upon which to determine defendant legally invoked judicial power for the immediate, necessary, efficient and basic functioning of the court.

Because this court rarely has treated the subject of inherent judicial power and never has laid down substantive or procedural guidelines concerning its use, defendant had little in our case law to guide him. Without question, he conscientiously was endeavoring to carry out his duties as chief judge in conformance with procedural rules he relied on.

The confidence and trust of the public and the bar depend on the efficient, competent administration of justice secured through adequate funding of courts. *Commonwealth ex rel. Carroll v. Tate*, 422 Pa. 45, 55–56, 274 A.2d 193, 199–200 (1971), cert. den., 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971).

█ We are convinced the judicial department often bears unwarranted public blame for criminal justice system failures for which other departments are responsible by failing to furnish funds, facilities, or personnel. If in this instance we enforced defendant's orders it might well be the criminal justice system in Webster County would be enhanced. But that is not the test, as we have indicated.

█ Under this record we are compelled to sustain the writ and annul defendant's orders. Costs are taxed to the plaintiff.

WRIT IS SUSTAINED.

MOORE, C. J., and MASON, RAWLINGS and HARRIS, JJ., concur.

UHLENHOPP, LeGRAND and REES, JJ., concur specially.

McCORMICK, J., takes no part.

UHLENHOPP, Justice (concurring specially).

I agree with the court majority that the writ should be sustained but I disagree as to the *extent* of the judiciary's "inherent power" to spend or commit public funds without authorization or delegation of authority by the legislature. The legislative branch cannot execute the laws or judge, and the executive branch cannot legislate or judge. I think the judicial branch should take especial care not to legislate or execute the laws. All of the three branches in their respective spheres are equal in power, and none can exercise the powers of the other branches. The Iowa Constitution states in § 1 of Article III (Of the Distribution of Powers):

> The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

While Iowa appears to the present time to have been practically free from judicial orders which impinge on legislative powers, the citations by the court majority show that such orders have been made elsewhere. I think this court should in strong language forestall any such trend here except in the very narrow area in which by default in appropriating the legislative branch brings the courts to a halt or is about to bring them to a halt—assuming such an unlikely contingency should occur.

I. The power to appropriate or commit public funds, and the power to tax, are handmaidens. For responsibility in government, the same individuals who appropriate and commit funds are the ones who levy the taxes to provide the funds. They are the elective members of the legislative branch who must regularly confront opposing candidates on the ballot before the taxpayers. The powers to spend and to tax, both at the state and the local levels, are legislative and not judicial in character. *Morgan County Comm'n v. Powell*, 292 Ala. 300, 293 So.2d 830; *Opinion to the Governor*, 239 So.2d 1 (Fla.); *State ex rel. Anderson v. Fadely*, 180 Kan. 652, 308 P.2d 537; *Bradshaw v. Ball*, 487 S.W.2d 294 (Ky.); *Carso v. Board of Liquidation of State Debt*, 205 La. 368, 17 So.2d 358; *Board of Supervisors of George County v. Bailey*, 236 So.2d 420 (Miss.); *State ex rel. Judges for 22nd Judicial Circuit v. City of St. Louis*, 494 S.W.2d 39 (Mo.); *Bullock v. Calvert*, 480 S.W.2d 367 (Tex.); *Commonwealth v. Dodson*, 176 Va. 281, 11 S.E.2d 120; *Board of Education of Wyoming County v. Board of Public Works*, 144 W.Va. 593, 109 S.E.2d 552.

In Iowa, legislative power is conferred by the constitution on the general assembly. The constitution states in § 1 of Article III (Legislative Department): "The Legislative authority of this State shall be vested in a General Assembly . . . ." The basic principle of appropriation as a legislative function is emphasized by § 24 of the same Article, "No money shall be drawn from the treasury but in consequence of appropriations made by law," and by a clause in § 31, "[N]or, shall any money be paid on any claim, the subject matter of which shall not have been provided for by pre-existing laws . . . ." In various statutes the general assembly has delegated the twin legislative powers of appropriation and taxation to such local bodies as county supervisors, city councils, and school boards. In this case we have supervisors. See Code 1977, §§ 332.-3(10), 341.1, 344.10.

How then can courts have power to appropriate or commit public funds? The claim is, "inherent" power. What *are* the powers of the judicial branch?

II. Section 1 of Article V of the Iowa Constitution contains the grant of power to the courts. Without defining "judicial power", § 1 simply states, "The Judicial power shall be vested in a Supreme Court, District Courts, and such other Courts, inferior to the Supreme Court, as the General Assembly may, from time to time, establish."

To me, the words "inherent power" do not indicate some mysterious authority

placing the judiciary above the separation of powers. Section 1 of Article V gives the courts only *judicial* power. Hence the inherent powers the courts have must merely be the components of the judicial power the courts possess. Thus the power to adjudicate "inheres" in judicial power; it is an "inherent power" of courts. In like manner courts possess inherent powers to adopt rules for the management of their cases, *Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564 (Iowa), to issue writs of prohibition, *Pottawattamie County Dep't of Social Services v. Landau*, 210 N.W.2d 837 (Iowa), and to license and discipline their own officers. *Committee on Professional Ethics v. Bromwell*, 221 N.W.2d 777 (Iowa). All of these are essentially judicial functions.

But the powers to appropriate and to tax do not inhere in judicial power; they inhere in legislative power, possessed by the general assembly. They are inherent powers *of the general assembly.*

III. Our decisions reveal however that a court can commit the public treasury in a very narrow area without violating the separation of powers: when a court cannot function due to default of the appropriating branch. *White v. Polk County*, 17 Iowa 413; *Seaton v. Polk County*, 59 Iowa 626, 13 N.W. 725; *State v. Tyler*, 122 Iowa 125, 97 N.W. 983. Legislative officials cannot halt the operation of the courts by default in appropriating, for Article V of the constitution contemplates we shall have ongoing courts. For appropriating officials by inaction to compel the courts to shut down would itself be unconstitutional—a violation of Article V.

If the supervisors of a county thus razed an old courthouse in the process of constructing a new one without providing any facility in which the courts could operate, I have no doubt that the judges could commit the public treasury for temporary courtroom space. In so doing, however, the judges would not exercise legislative power; they would carry out the mandate of Article V of the constitution that we shall have an operating judicial system. They would thus fulfill a judicial function under Article V, rather than perform a legislative function. If the general assembly should correspondingly fail to provide any facility within which the governor could operate, I have no doubt he could temporarily commit the state treasury for space. In so doing he would carry out Article IV for an ongoing executive, and thus perform an executive function. That would be an inherent executive power.

IV. The cases which actually arise, however, are not of that kind. State and local appropriating authorities normally provide at least essential facilities, equipment, salaries, and personnel for the courts. Cases from other jurisdictions demonstrate that the conflict arises when the appropriating authorities and the judges disagree on *how much* the judicial branch shall have—how much in salaries, equipment, facilities, personnel. The judges contend that they could be more efficient, do a better job, and dispose of additional work if they had more funds than the appropriating authorities are willing to raise by taxes or take from other public agencies—such as funds for more court reporters (*Rappaport v. Payne*, 139 Cal.App. 772, 35 P.2d 183), for higher probation officer salaries (*Deddens v. Cochise County*, 113 Ariz. 75, 546 P.2d 811), for better furnishings for chambers (*State v. Davis*, 26 Nev. 373, 68 P. 689), or for cooler facilities by use of air conditioners (*State v. County Court of Kenosha County*, 11 Wis.2d 560, 105 N.W.2d 876).

If the courts *can* function but the dispute is over the *extent* of the salaries, equipment, facilities, and personnel which are to be provided, I come down on the side of the appropriating authorities. A main purpose of having a general assembly and corresponding local bodies is to provide officials to make the choices on how much shall be spent for what and to divide up revenues among public agencies accordingly—and also to levy taxes as necessary. If the judges inject themselves into this budgetary process they enter the legislative arena. Their role in the process is to present their needs to appropriating authorities as the executive branch does, not to overrule ap-

propriating authorities. If judges can overrule appropriating authorities in the name of greater efficiency or better operations, why cannot the governor do likewise?

In sum, the ultimate decision on how much and in what way public funds are to be spent is for the people, and they voice their views through their elected officials in the legislative branch at the state and local levels. I would thus prohibit judges from spending or committing public funds not legislatively authorized except in the narrow area in which, through default by the appropriating officials, a court cannot perform its functions.

Since the Webster County District Court can function without the investigator the supervisors refused to authorize, I concur in sustaining the writ.

LeGRAND and REES, JJ., concur in this special concurrence.