# In the Iowa Supreme Court

No. 25–0366

Submitted February 11, 2026—Filed May 1, 2026

**Bart Richmond,**

Appellee,

vs.

**Jefferson County Attorney,**

Appellant.

Appeal from the Iowa District Court for Jefferson County, Jeffrey Farrell, judge.

A county attorney appeals the district court's ruling denying his constitutional challenge to a sheriff's *Brady-Giglio* list appeal under Iowa Code § 80F.1(25). **Affirmed.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Chauncey T. Moulding, Jefferson County Attorney, and K. Elizabeth Estey (argued), Assistant Jefferson County Attorney, for appellant.

Charles Gribble (argued) of Gribble Law Firm, Des Moines, for appellee.

W. Charles Smithson, West Des Moines, for amicus curiae Twenty-Eight Iowa State Senators.

**McDermott, Justice.**

In this case, the Jefferson County Sheriff, Bart Richmond, filed a petition under Iowa Code § 80F.1(25) (2025) to have his name removed from the Jefferson County Attorney's *Brady-Giglio* list. A *Brady-Giglio* list is a record maintained by a prosecutor's office that contains the names of law enforcement officers who have a known history of misconduct, dishonesty, or other integrity issues that could compromise their credibility while testifying. The district court granted the sheriff's petition and ordered the county attorney to remove the sheriff from the list. On appeal, the county attorney argues that the list removal procedures in § 80F.1(25) unconstitutionally interfere with his due process obligations to criminal defendants and violate the separation-of-powers doctrine.

I.

In April 2024, two Fairfield police officers arrested a suspect for driving while intoxicated. A Jefferson County sheriff's deputy arrived to assist. As one officer questioned the driver, another officer handcuffed a passenger. The passenger and the sheriff's deputy then got into an argument. Body camera footage shows that the deputy grabbed the handcuffed passenger and forcefully shoved his head down toward the vehicle's trunk. Holding the passenger in that position, the deputy moved his face inches from the passenger's and yelled, "You know what? You're not going to tell me what I can and can't do! Do you understand that young man?" As the passenger proclaimed apologies with his face pressed against the trunk, the deputy continued, "You better understand it. . . . And you know what? You're going to learn what respect is!"

About a week later, the Jefferson County Attorney, Chauncey Moulding, reviewed the footage. He emailed Richmond to ask if the deputy's conduct violated the sheriff's office's use-of-force policy. After receiving no response for

six days, Moulding emailed again, stating he would interpret further silence as an admission that the deputy's actions were consistent with office policy. Although Richmond never replied to Moulding, Richmond and his chief deputy met with the deputy in question that same day and ordered him to undergo de-escalation and communication retraining.

When Richmond failed to respond, Moulding sent the footage to the Keokuk County Attorney for an independent review. Richmond only learned of this outside investigation days later when Moulding's assistant called to request a copy of the sheriff's office's use-of-force policy. Surprised by the request, Richmond initially refused to provide it, insisting that the Keokuk County Attorney contact him directly. Four days later, Moulding personally ordered Richmond to produce the policy, threatening a judicial injunction. Richmond eventually complied, but declined to share details regarding internal disciplinary actions, citing privacy concerns with personnel matters.

Dissatisfied with what he viewed as a lack of cooperation, Moulding initiated the process to place Richmond on a *Brady-Giglio* list. As required by law, Moulding notified Richmond of the pending investigation and scheduled a "list placement interview." When Moulding refused to reschedule the interview to accommodate Richmond's legal counsel, Richmond declined to participate.

Shortly thereafter, Moulding officially added Richmond to the county's *Brady-Giglio* list, asserting that Richmond's conduct during the investigation cast doubt on his "judgment, credibility, candor, and truthfulness." Moulding sent a separate letter to various state and federal law enforcement officials throughout Iowa, including officials with the Fairfield Police Department, Iowa State Patrol, Iowa Division of Criminal Investigation, Iowa Attorney General's Office, and United States Attorney's Office for the Southern District of Iowa. The

letter advised that Richmond was no longer considered a credible witness and "should not place himself, and should not be asked to place himself, into positions where he may be called as a witness to testify."

Richmond requested a reconsideration of his placement on the list under Iowa Code § 80F.1(24)(*a*)(4). Although Moulding asked Richmond to appear in person for the meeting, Richmond appeared only virtually. Richmond also refused to turn on his camera during the meeting despite Moulding's repeated requests, and further refused to explain why he wouldn't turn it on. After the reconsideration interview, Moulding upheld his original decision. Richmond then filed a petition for judicial review under Iowa Code § 80F.1(25), which allows a district court to affirm, modify, or reverse the prosecutor's decision, including ordering the officer's name removed from the list.

Moulding moved to dismiss the case, arguing that the statute violated due process and the separation-of-powers doctrine. The district court denied the motion and, after reviewing the evidence in camera (i.e., privately in chambers), ruled in Richmond's favor. The district court found that although Richmond's actions lacked forthrightness, they did not constitute actual deceit or dishonesty. As a result, the district court ordered that Moulding remove Richmond's name from the list. Moulding filed this appeal.

## II.

The *Brady-Giglio* list is named after two precedent-setting United States Supreme Court cases. In *Brady v. Maryland*, the Court held that the prosecution violates due process if it suppresses evidence favorable to the accused that is material to either guilt or punishment. 373 U.S. 83, 87 (1963). In *Giglio v. United States*, the Court expanded this rule to include impeachment evidence, holding that when a witness's reliability is central to determining guilt or innocence,

failing to disclose evidence that undermines the witness's credibility justifies a new trial. 405 U.S. 150, 154–55 (1972).

Under the *Brady-Giglio* line of cases, the failure to disclose an officer's prior misconduct, such as untruthfulness or criminal activity, can warrant the reversal of a defendant's conviction. Some prosecutors thus create *Brady-Giglio* lists that identify compromised witnesses. Because prosecutors want to avoid building a case around an untruthful officer, being included on a *Brady-Giglio* list presents serious risks to an officer's career. Without the ability to investigate, arrest, or testify, there is often little traditional police work left for the officer to do.

Before 2022, prosecutors in Iowa generally had free rein to manage their *Brady-Giglio* lists as they saw fit, with officers lacking a formal path to challenge their placement on a list. But the legislature has since passed two major rounds of reform granting officers an opportunity to challenge a listing. In 2022, the legislature enacted an amendment that defined a *Brady-Giglio* list as "a list compiled by a prosecuting agency containing the names and details of officers who have sustained incidents of untruthfulness, criminal convictions, candor issues, or some other type of issue which places the officer's credibility into question." 2022 Iowa Acts ch. 1142, § 1 (codified at Iowa Code § 80F.1(1)(*a*) (2023)). The amendment required prosecuting agencies to follow specific guidelines when adding an officer to a *Brady-Giglio* list, including providing notice to officers and allowing them to request reconsideration of their placement on a list. *Id.* § 4 (codified at Iowa Code § 80F.1(24) (2023)).

In 2024, another amendment added a layer of judicial oversight. *See* 2024 Iowa Acts ch. 1121, § 1 (codified at Iowa Code § 80F.1(25) (2025)). Under new subsection (25), officers are granted the right to petition a district court for review

of the prosecutor's listing decision. Iowa Code § 80F.1(25). Now, upon either party's request or the district court's own motion, the district court "shall perform an in camera review of the evidence and may hold a closed hearing." *Id.* Evidence offered as part of the review is generally kept confidential. *Id.* As to remedies, the statute grants the district court authority to "affirm, modify, or reverse" a prosecuting agency's *Brady-Giglio* determination and order relief, "including removal of the officer from a Brady-Giglio list, as justice may require." Iowa Code § 80F.1(25).

In this appeal, Moulding does not contest the district court's specific order to remove Richmond from the county's *Brady-Giglio* list. Instead, he raises a challenge to the constitutionality of § 80F.1(25) itself, which he presented in an unsuccessful motion to dismiss. He asserts three grounds on appeal: (1) the statute violates the due process rights of criminal defendants, (2) the statute violates the separation-of-powers doctrine by limiting prosecutorial discretion, and (3) the statute is void for vagueness.

**A. Due Process.** Moulding argues that judicial review of *Brady-Giglio* list determinations violates the due process rights of criminal defendants by restricting a prosecutor's ability to disclose impeachment evidence to the accused. Again, under *Brady*, prosecutors violate a defendant's due process rights if they withhold evidence that is favorable to the defendant and material to either guilt or punishment. *Brady*, 373 U.S. at 87; *see also, Harrington v. State*, 659 N.W.2d 509, 521–22 (Iowa 2003).

Moulding's argument is built on the premise that a prosecutor cannot disclose impeachment evidence about an officer in a particular case if the court has previously removed the officer from a *Brady-Giglio* list. But this premise is incorrect, because § 80F.1 only regulates the *list*, not the disclosure of

information in a particular case. The court's removal of an officer from a *Brady-Giglio* list does not prevent a prosecutor from disclosing exculpatory evidence about that officer to a defendant in a case. *See Fraternal Ord. of Police Lodge No. 5 v. City of Philadelphia*, 267 A.3d 531, 553 (Pa. Commw. Ct. 2021) ("[T]he [prosecutor] may provide information about any police officer to criminal defense counsel regardless of whether that officer is on the [*Brady-Giglio*] List." (emphasis omitted))

This is because the constitutional obligation to disclose exculpatory material exists independently of whether a prosecutor maintains a *Brady-Giglio* list. Indeed, nothing in § 80F.1 requires a prosecutor's office to create a separate *Brady-Giglio* list at all. *See* Iowa Code § 80F.1(24)(*a*) (requiring "[a] prosecuting agency *that maintains* a Brady-Giglio list" to adopt various policies) (emphasis added). And nothing in § 80F.1 dictates what a prosecutor must—or must not—disclose in any defendant's case.

In his attack on the statute, Moulding advances an overly broad notion of what constitutes a *Brady-Giglio* list. A *Brady-Giglio* list is not a catchall term for every internal note, discussion, or evaluation a prosecutor's office makes regarding an officer's credibility. Read in context, § 80F.1(1)(*a*)'s definition of a *Brady-Giglio* list suggests that it is a formal, prospective, and publicly available declaration of an officer's unreliability. These characteristics are apparent in this case, as demonstrated in both Moulding's detailed letter to Richmond explaining the placement and Moulding's separate letter to law enforcement officials around the state providing notice of the placement.

What's more, when a court orders an officer's removal from the list, it may (as here) be because the court found the underlying evidence neither "material" nor "favorable" under the *Brady* standard. 373 U.S. at 87. A defendant's due

process rights are only implicated when a prosecutor is prevented from disclosing information that meets these specific criteria. As a result, a judicial determination that evidence falls outside both categories arguably provides an additional safeguard for the prosecution in ensuring it has met its duty to uphold a defendant's due process rights.

We thus affirm the district court's conclusion that § 80F.1(25) does not intrude on a prosecutor's due process obligations to defendants.

**B. Separation of Powers.** Moulding further argues that § 80F.1(25) is unconstitutional because it violates the separation-of-powers doctrine by limiting prosecutorial discretion and thus improperly permitting judicial oversight of an inherently executive function. The Iowa Constitution expressly provides for a separation of powers. Iowa Const. art. III, § 1. "The division of the powers of government into three different departments—legislative, executive, and judicial—lies at the very foundation of our constitutional system." *State ex rel. White v. Barker*, 89 N.W. 204, 208 (Iowa 1902). The separation of powers between the three branches prevents "a gradual concentration of the several powers in the same department," *The Federalist No. 51*, at 349 (James Madison) (Jacob E. Cooke ed., 1961), and thus operates as a "safeguard against tyranny," *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 872–73 (Iowa 1978) (en banc).

As we have observed, "the prosecutorial function of a criminal case is historically within the province of the executive branch." *State v. Hoegh*, 632 N.W.2d 885, 889 (Iowa 2001). Moulding first notes that because the power to prosecute belongs exclusively to the executive branch, it necessarily includes the power to make decisions related to charging, trial strategy, and witness selection.

He argues that a court's power to remove an officer from a *Brady-Giglio* list interferes with these prosecutorial functions.

In arguing that such an intrusion occurs with § 80F.1(25), Moulding relies on *Savage v. Maryland*, a case regarding prosecutorial immunity. 896 F.3d 260 (4th Cir. 2018). In *Savage*, a Maryland prosecutor informed city officials that he would no longer allow a specific officer to testify based on concerns about his veracity, leading to the officer's firing. *Id.* at 266. The officer sued, alleging that the prosecutor violated his First Amendment rights. *Id.* at 267. The prosecutor argued he was protected by absolute prosecutorial immunity, which applies when actions are "intimately associated with the judicial phase of the criminal process." *Id.* at 268 (quoting *Nero v. Mosby*, 890 F.3d 106, 117–18 (4th Cir. 2018)). On appeal, the United States Court of Appeals for the Fourth Circuit determined that decisions regarding witness credibility and whether to call a witness are core prosecutorial functions directly tied to the conduct of a trial. *Id.* at 270. The court held that the immunity must apply when a prosecutor makes adverse credibility determinations while attempting to comply with disclosure obligations. *Id.* at 273–74.

But *Savage* doesn't take Moulding as far as he might hope. *Savage* addresses a prosecutor's immunity from suit, whereas § 80F.1(24)(*i*) affirmatively disclaims any private cause of action against a prosecutor. *See* Iowa Code § 80F.1(24)(*i*). *Savage* also did not address separation of powers concerns; its discussion of the basic functions of the job defined the scope of immunity, not the legislature's authority to regulate. 896 F.3d at 273–74. And *Savage* focused on the First Amendment implications of an employment decision, which is categorically different from the judicial review of a *Brady-Giglio* list decision. *Id.* at 270.

Moulding's separation-of-powers argument encounters the same obstacle as his due process argument: the statute does not prevent prosecutors from carrying out their core functions. Section 80F.1(25) only raises a separation-of-powers problem if it in fact interferes with a core prosecutorial power. Although under the statute a district court may order a prosecutor to remove an officer's name from a list, the statute gives the court no authority to require the prosecutor to call the officer as a witness at trial or to disclose (or not disclose) exculpatory or impeachment information in particular cases; those powers remain with the prosecutor. The statute only authorizes judicial intervention as to the separate ability to maintain a *Brady-Giglio* list, and only then in prescribed situations.

Ultimately, of course, both prosecutors and law enforcement officers are performing executive functions. The legislature's enactment of § 80F.1(25), in effect, regulates certain aspects of their relations and allows judicial review of disputes under that law. This is the three branches at work, not a violation of separation of powers. Moulding has failed to establish a separation of powers violation, and we thus affirm the district court's ruling on this issue.

**C. Void for Vagueness.** Moulding argues on appeal that § 80F.1(25)'s *Brady-Giglio* provisions were "shoehorned" into a statute originally designed to protect officers from unfair employment practices within their departments, resulting in "an incoherent, unconstitutional, and clumsy hybrid." Moulding's appeal brief offers a single example to illustrate the problem, pointing to § 80F.1(1)(*b*)'s reference to a "complaint" and then arguing that a *Brady-Giglio* list dispute generally does not involve a formal complaint.

Although Moulding asserts that he raised this "void for vagueness" argument in the district court, a reader has to squint awfully hard to find it.

Moulding's arguments below offer criticism about the drafting of the *Brady-Giglio* provisions, but nowhere do they include a formal constitutional vagueness challenge. Even if his complaints about the statute's drafting were sufficient to make out such a challenge, the district court certainly never ruled on the issue. As we have said many times, "issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Because Moulding failed to preserve error on this issue, we will not address it.

III.

For these reasons, we reject Moulding's constitutional challenges to Iowa Code § 80F.1 and affirm the district court's judgment removing Richmond from the county attorney's *Brady-Giglio* list.

**Affirmed.**